## In re BUTTS.

(District Court, N. D. New York. February 27, 1903.)

1. BANKRUPTCY—DISCHARGE—DEBTS EXCEPTED FROM RELEASE.

Bankr. Act July 1, 1898, § 17, cl. 4 (30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), providing that a discharge shall release a bankrupt from all provable debts except such as "were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in

any fiduciary capacity," should be so construed as to include within the exception debts created by fraud, embezzlement, or misappropriation in whatever capacity or relation the bankrupt was acting.

2. SAME.

Goods were shipped to a bankrupt under a written contract which on its face purported to be one of sale and purchase, contemplating that the goods would be resold by the purchaser and payment therefor made at stated times in cash or notes received on sales at prices therein fixed. It contained the words: "For conditions of settlement, see reverse side of contract." On the back was the provision: "It is agreed that you will hold in trust and separate for the settlement of our account with you all of said goods unsold and all currency, open accounts, notes, liens, mortgages or other values received for goods sold." *Held*, that such provisions did not convert the contract from one of sale into one creating a trust and establishing a fiduciary relation between the parties, nor render the debt from the bankrupt on account of goods sold and not paid for one created by fraud, embezzlement, misappropriation, or defalcation while acting in a fiduciary capacity, within the meaning of Bankr. Act July 1, 1898, § 17, cl. 4 (30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), so as to prevent its release by a discharge of the bankrupt.

Motion for an injunction staying the American Agricultural Chemical Company, plaintiff, in an action pending in the Supreme Court of the state of New York against the bankrupt, James P. Butts, from prosecuting such action to judgment and enforcing same.

Gibbs & Wilbur, for the motion.
Edson A. Hayward, opposed.

RAY, District Judge.   In the month of October, 1901, the American Agricultural Chemical Company shipped and delivered to the said James P. Butts at Oneonta, N. Y., certain goods under and pursuant to the terms of certain agreements, partly printed and partly in writing (both being the same in terms, and therefore treated here as one), which provide as follows:

"We hereby agree to ship you, under the conditions and stipulations hereinafter named, the following fertilizers at prices and terms named below. The terms and conditions of this contract are as follows, and the prices named below are net to us."

Then follows a description of the goods shipped, with prices, etc.

"Full settlement for spring and fall shipments shall be made by you not later than November 1st, 1902, in cash or by notes (given by purchasers of these goods) received and indorsed by you. If settlement is made in cash at above date, we will allow you a discount of five per cent. (5%) from the face of invoices. For all cash received prior to November 1st, 1902, we will allow you an additional discount from the face of invoices at the rate of eight per cent. (8%) per annum, from the date of such prepayment to November 1st, 1902.

"For conditions of settlement, see reverse side of contract.

"This contract, written and printed, constitutes the entire agreement, and no verbal understanding will be recognized. The above named provisions of this contract, as well as those on the reverse side of this agreement, which are, and are to be considered as a part of this contract, shall not be in force until accepted by the home office."

This was signed by said company by its salesman. Immediately below, the defendant (now bankrupt) signed the following:

"Accepted on conditions named.                    J. P. Butts."

On the back of this order so accepted was printed the following:

"The following terms and conditions are, and are to be considered as a part of the terms and conditions stated on the opposite side of this contract form:—

"You agree to render us an account of goods unsold on July 1st and also on November 1st, 1902. It is agreed that you will hold in trust and separate for the settlement of our account with you, all of said goods unsold and all currency, open accounts, notes, liens, mortgages or other values received for goods sold.

"If settlement is made in purchasers' notes, said notes shall be made out on blanks furnished by us, payable to our order at some bank, &c.

"If we request it, you agree to give your own note, payable on bank, with the express understanding that said note is to be received by us as evidence of sales and in confirmation of your guarantee as above stated and not as payment: and notwithstanding the reception of said note, all accounts and notes and moneys received for goods, are to remain our property, but your note shall be enforcible to the extent of all losses suffered by us on all sales made and guaranteed by you."

Under these agreements, goods to the amount of $1,997.30 were delivered to the said defendant, Butts, and disposed of by him, and not paid for.

The complaint, which sets out the contracts in full, alleges, after stating a proper demand:

"But the said defendant refused, and refuses and neglects, to deliver to the plaintiff the proceeds of any sale, or to return to the plaintiff any of said goods, or any money or property received therefor, or an account thereof; and defendant refuses to account for said property so intrusted to him, or for the proceeds thereof, and has wrongfully, unlawfully, and fraudulently converted said goods and property, and embezzled and misappropriated the proceeds thereof, and converted the same to his own use, which said goods and the proceeds thereof were received by him in his said fiduciary capacity. [The complaint alleges that he received same in such capacity.] That he has fraudulently and wrongfully converted and disposed of said goods and the proceeds thereof to his own use, to the plaintiff's damage in the sum of one thousand one hundred ninety-seven dollars and thirty cents."

That this debt or claim is provable in bankruptcy cannot be successfully questioned or denied. The claim is founded on an express contract, and that the bankrupt was liable for the value of these goods, as fixed by the agreements, cannot be questioned. The legal effect of the allegations of the complaint is not broader than the legal effect of the contract made a part thereof. By section 17 of the act of July 1, 1898 (30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), "An act to establish a uniform system of bankruptcy throughout the United States," it is provided:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

Must the embezzlement, misappropriation, or defalcation have occurred while the person charged was acting as an officer or in a fiduciary capacity, and with direct reference to the funds or property in his hands as such officer or person acting in such fiduciary capacity? This question seems not to have been settled. In re Basch (D. C.) 97 Fed. 761, Brown, District Judge, held:

"A debt due by a bankrupt in the character of a commission merchant, arising out of his failure to account for the value of goods consigned to him

for sale on commission, on a contract to return the goods or their specific proceeds, is not a debt created by the bankrupt's 'fraud, embezzlement, misappropriation, or defalcation while acting in a fiduciary capacity,' and, therefore, will be released by his discharge in bankruptcy."

In Upshur v. Briscoe, 138 U. S. 378, 11 Sup. Ct. 317, 34 L. Ed. 931, the court, in speaking of section 33 of the act of 1867 (14 Stat. 533), says:

"It is to be noted that the language of section 33 of the act of 1867 excepts debts created by the bankrupt 'while acting in any fiduciary character'; and the language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created. In this view, it was said in Cronan v. Cotting, supra: 'We are inclined to the opinion that the phrase implies a fiduciary relation existing previously to, or independently of, the particular transaction from which the debt arises. The collocation tends to favor this interpretation. If the phrase, "while acting," etc., be referred to that which immediately precedes, it implies something in the nature of defalcation. If it be referred to the first branch of the provision, its association with fraud and embezzlement carries the implication of a debt growing out of some fraudulent misappropriation, or, at least, breach of trust.' "

In Matter of Bullis, 68 App. Div. 508, 73 N. Y. Supp. 1047, it was stated (while not necessary to the decision of the case) that:

"Subdivision 4 of section 17 of the national bankruptcy law (30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]). excepting from the operation of the discharge debts 'created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity,' does not, in the use of the words 'fraud,' 'embezzlement' and 'misappropriation,' relate to an individual, and by the word 'defalcation' alone apply to one 'acting as an officer or in any fiduciary capacity.' "

In Frey v. Torrey, 70 App. Div. 166, 75 N. Y. Supp. 40, it was held:

"The words 'while acting as an officer or in any fiduciary capacity,' used in subdivision 4 of section 17 of the United States bankruptcy law, excepting from the operation of the discharge in bankruptcy an indebtedness 'created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity,' do not qualify the words 'fraud,' 'embezzlement,' and 'misappropriation,' but only the word 'defalcation.' "

That subdivision 4 of section 17 is open to both constructions is a matter of regret. If this subdivision had been made to read, "or were created by his fraud, embezzlement, or misappropriation, or were created by his defalcation while acting as an officer or in any fiduciary capacity," there would be no question that the words "while acting as an officer or in any fiduciary capacity" would only qualify or apply to the word "defalcation." Or if the subdivision had been made to read, "or were created by his fraud, embezzlement, or misappropriation, or were created by his fraud, embezzlement, or misappropriation or defalcation while acting as an officer or in any fiduciary capacity," there would be no question that debts created by fraud or embezzlement or misappropriation or defalcation would not be affected by a discharge in bankruptcy, irrespective of the existence of the technical trust or fiduciary relation.

The framing of this subdivision was a matter of great difference of opinion, and the words used are the result of an agreement between those who insisted that debts created by fraud, embezzlement, and misappropriation, irrespective of the existence of the technical trust

relation, should not be affected by the discharge, and those who insisted they should be. It was contended that debts created by fraud, by embezzlement, or by misappropriation should not be affected by the discharge in bankruptcy. Indeed, it is difficult to see why they should be. The existence or nonexistence of the technical trust or fiduciary relation would seem to be immaterial so far as the moral turpitude is concerned. Is there any good reason why the executor, trustee of an express trust, or guardian of an infant should be refused a discharge if he embezzles or misappropriates the funds intrusted to him, when the person who does not occupy these technical trust or fiduciary positions may embezzle or misappropriate the funds or property intrusted to him and be discharged from the debt thus created in bankruptcy proceedings? If there is a debt existing for property or money embezzled or misappropriated by a person occupying the technical fiduciary position, there is a "defalcation," for the money or property is gone, and has not been made good. "Defalcation while acting as an officer or in any fiduciary capacity" would seem to imply and include either embezzlement or misappropriation or both. It was supposed that the use of the language employed would forbid the discharge of any person from a debt created by his fraud, or by his embezzlement or misappropriation of funds or property, in whatsoever capacity or relation acting, and also the debts created by the defalcation of an officer or person occupying the technical trust or fiduciary relations known to and recognized by our law. It must be conceded, however, that the word "defalcation" is broader than "embezzlement" or "misappropriation." Neither class of debts so created should be construed out of the section providing what debts shall not be affected by a discharge. But this case does not necessarily turn on this question.

It is clear that a discharge in bankruptcy will not release Butts from the debt due the plaintiff if such debt was created by the embezzlement of funds or property belonging to the plaintiff, or by the misappropriation of property or funds belonging to the plaintiff, within the meaning of the language of the act quoted. The first consideration is whether or not the contracts annexed to the complaint, when properly construed, retained the title of the property therein mentioned and of the proceeds of its sale in the plaintiff. These contracts are mere memoranda made by the salesman of the plaintiff and accepted by the defendant as to a contract or agreement in pursuance of which the plaintiff was to ship goods to the defendant to be sold by him, with discounts from the prices fixed in case settlements were made at or before certain dates mentioned. On the face of these memoranda no mention is made of any trust or trust agreement, or of any fiduciary relation, or retention of title. On the face of the agreements the plaintiff agreed to ship the goods at prices fixed, and the defendant had the right to dispose of the same in any way he saw fit. The defendant could settle or pay cash or notes given by the persons to whom he sold the goods if indorsed by the defendant. These words are contained in the agreement on the face thereof. "For conditions of settlement, see reverse side of contract." On the back of this agreement, we find:

"It is agreed that you will hold in trust and separate for the settlement of our account with you, all of said goods unsold and all currency, open accounts, notes, liens, mortgages or other values received for goods sold."

It will be noted that this holding in trust is simply for the settlement of the account between the plaintiff and the defendant. If it was intended to create a technical trust making the defendant a trustee for the benefit of the plaintiff, it is strange that these trust provisions were printed on the back of the memoranda, and not in them and on the face thereof, where they would be read, probably, by the defendant before signing the paper.

In the last paragraph printed on the back of the memoranda we find an obscure and confused statement to the effect that all accounts and notes and moneys received for goods are to remain the property of the plaintiff. These words, if intended to create a trust or express trust relation between plaintiff and defendant, ought to have been included in and written upon the face of the contract itself. The parties, however, have characterized these clauses upon the back of the memorandum of agreement in the contract, by words forming a part of it, as "conditions of settlement," and they say, "For conditions of settlement, see reverse side of contract." All the printing on the back of the agreement or memoranda is to be considered and treated as conditions of settlement, and not as an agreement between the parties creating or establishing a technical trust, or the trust or fiduciary relation mentioned in the bankruptcy law.

It is self-evident that the real transaction between the plaintiff and the defendant was the sale by the former to the latter of certain goods, with the expectation that they would be resold by the purchaser, and it is not hinted upon the face of the agreement and above the signatures thereto that any trust relation is intended to be created, or that the title of the goods sold by the plaintiff to the defendant is or is intended to be retained in the plaintiff. It ought not to be held, and this court will not hold, that the character of the real transaction between the parties, that of sale by plaintiff and purchase by the defendant, is changed into a technical trust, or that a fiduciary relation is established, or that the plaintiff retained the title to his goods, by the use of such language printed upon the back of the agreement. It was not competent for the parties, in this obscure and uncertain manner, to change the legal effect of the transaction. It is not at all probable that the defendant understood these memoranda to be susceptible of such a construction or to have such meaning or effect as is now claimed by the plaintiff. The words used and the whole construction of the instruments negative such an intent.

These conclusions are fully sustained by adjudicated cases. Matter of John H. Benedict, 8 Am. Bankr. Rep. 463, 75 N. Y. Supp. 165; Burnham v. Pidcock, 5 Am. Bankr. Rep. 590, 58 App. Div. 273, 68 N. Y. Supp. 1007; Braken v. Milwer, 5 Am. Bankr. Rep. 23, 104 Fed. 522; Knott v. Putman, 6 Am. Bankr. Rep. 80, 107 Fed. 907; Mulock v. Byrnes, 129 N. Y. 23, 29 N. E. 244. The facts in Matter of Benedict, 8 Am. Bankr. Rep. 463 (see page 465) 75 N. Y. Supp. 165, seem to be almost identical with the facts of this case. The decision in Watertown Carriage Co. v. Hall, 75 App. Div. 201, 77 N. Y. Supp. 1028, is

not in conflict with these views. That case holds that "a demand against a bankrupt for the conversion of property is not a provable debt under the bankruptcy law of 1898, and therefore is not released by his discharge in bankruptcy." In that case, the cause of action was simply and purely for the wrongful, fraudulent, and unlawful conversion, misappropriation, and embezzlement of the sum of $65, lawful money of the United States of America. No contractual relation was alleged or indicated. The wisdom and propriety of enjoining actions of this character, like the one sought to be enjoined in this case, cannot be doubted. In re Basch (D. C.) 97 Fed. 761.

The motion must be granted. It is so ordered.