## In re HARPER.

(District Court, W. D. Virginia. December 20, 1904.)

1. JUDGMENTS—RES JUDICATA—FINDINGS OF MATERIAL ISSUES.
    A finding of the court, within the pleadings, on a material matter, and not on a matter merely incidental or collateral to issues tendered thereby, is final and conclusive, and cannot be impeached in another proceeding.

2. BANKRUPTCY—DISCHARGE—FRAUDULENT DEBTS.
    The words "while acting as an officer or in any fiduciary capacity," found in section 17, cl. 4, Bankr. Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], excepting from the operation of a discharge in bankruptcy debts created by fraud, etc., while acting as an officer, etc., qualifies the words "fraud, embezzlement, misappropriation, or defalcation," and are not restricted in their scope to the limitation of the word "defalcation."

3. STATUTES—CONSTRUCTION—TECHNICAL WORDS.
    In enacting section 17, cl. 4, Bankr. Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], excepting from the operation of a discharge debts created by fraud, etc., while acting as an officer or in any fiduciary capacity, Congress must be presumed to have known the construction placed by the courts on the words "fiduciary capacity" as used in former bankrupt acts, and to have known that such words might be construed not to embrace officers of private corporations.

4. BANKRUPTCY—DISCHARGE—FRAUDULENT DEBTS OF OFFICERS—WHO ARE OFFICERS.
    The bankruptcy acts of 1841 and 1867 excepted from the operation of a discharge debts contracted in consequence of a defalcation as a "pub-

lic officer." The act of July 1, 1898, c. 541, § 17, cl. 4, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], provides that the discharge shall release a bankrupt from all provable debts, except such as were created by fraud, embezzlement, or defalcation, while acting as an "officer." *Held*, that it must be presumed that the change was intentional, and, by omitting the word "public," officers of private corporations are included within the term "officer."

Herron, Gatch, Herron & James, for receiver.

Ayers & Fulton, for bankrupt.

McDOWELL, District Judge. On May 18, 1904, E. L. Harper was by this court adjudicated a voluntary bankrupt on a petition filed by him on that day. On the filing of a verified petition of the bankrupt alleging the pendency, in the United States Circuit Court for the Southern District of New York, of an action by George C. Rankin, receiver of the Fidelity National Bank of Cincinnati, against the bankrupt, "founded on a claim from which a discharge in bankruptcy would be a release," an order was ex parte entered on October 18, 1904, staying said action. On November 21, 1904, Rankin, receiver, filed a petition praying that the aforesaid stay order be set aside, to which the bankrupt has demurred. It is alleged in said petition that the action in New York is founded on a judgment rendered by the United States Circuit Court, Western Division of the Southern District of Ohio, in favor of said receiver against the said Harper, for moneys embezzled and misappropriated by Harper while acting in the capacity of vice president of the Fidelity National Bank. A copy of the bill of complaint filed against Harper and others in the federal court in Ohio, and a copy of the decree of that court of October 10, 1903, are filed as exhibits with the petition. The bill of complaint in the court in Ohio was filed by the then receiver of the Fidelity National Bank in 1887. The defendants therein are the directors, including Harper, who was also the vice president of the bank. The decree, which is filed as an exhibit, reads as follows:

"This cause came on for hearing at the October term, 1903, of this court, and the court thereupon find as follows:.

"That, since the bringing of this suit, David Armstrong, receiver of the Fidelity National Bank, and the original plaintiff in this case, has resigned, and that George C. Rankin has been appointed such receiver by the Comptroller of the Currency, and is now acting as such, and has been made plaintiff in this case by order of this court.

"That said Edward L. Harper has been personally served with process in this case, and has filed no answer to the allegations of the bill of complaint, and is in default, and has been notified, as ordered by the court, of the setting of this cause.

"And on consideration thereof the court find that the defendant Edward L. Harper was vice president and in general charge of the affairs of the said Fidelity National Bank from its organization until its failure, and that during said time he embezzled large sums of money of the funds of said bank; that he loaned large sums of money to firms and corporations in which he was interested, without authority and contrary to law, and that the proceeds of said loans were taken by him from said bank for his personal use, and that the said firms and corporations became insolvent, and the sums so loaned were entirely lost to the bank; that he used the funds of said bank in large amounts in personal speculations, and which sums were wholly lost to the bank; that the allegations contained in the bill of complaint in reference to said several matters are true, as therein set forth. By reason of which illegal

acts of the said Harper the said bank was damaged in more than the sum of two million five hundred thousand dollars ($2,500,000), for which sum said Harper is liable to the bank.

"It is therefore ordered, adjudged, and decreed by this court that the said plaintiff recover, for the use of said bank, of the said defendant Edward L. Harper the sum of two million five hundred thousand dollars, with interest from June 20, 1887, the date of the failure of said bank, together with the costs of suit to be taxed, and that execution issue therefor."

The bill is of great length, but only one paragraph need be now noticed. In paragraph 23 it is averred as follows:

"And complainant avers that the monies hereinbefore alleged to have been loaned the firm of Wilshire, Eckert & Co., and the individual members of said firm, and the firm of E. L. Harper & Co., and to the companies and corporations of which the said E. L. Harper was a member or principal owner, and to the said Whitely, Fassler, and Kelly, as well as the monies, drafts, and other obligations of said company, hereinbefore alleged to have been embezzled and misappropriated by the said E. L. Harper and Benjamin E. Hopkins, were to a large extent used and lost by the said E. L. Harper and Benjamin E. Hopkins, with others, in their said speculations in wheat."

As the finding of the court is within the pleadings on a material matter, and is not on a matter merely incidental or collateral to an issue tendered by the bill, it is final and conclusive. It is therefore not open to dispute here that the judgment was rendered on a debt created by fraud, or embezzlement, or misappropriation or defalcation on the part of the bankrupt. If this debt was created while Harper was either acting as an "officer" or while he was acting in any "fiduciary capacity," within the meaning properly to be given to the language of section 17, cl. 4, of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], his discharge would not release such debt, and the order staying the action in New York should be set aside. The opinion is expressed in Re Butts, 120 Fed. 966, and in numerous other cases, that the words "while acting as an officer or in any fiduciary capacity" qualify only the word "defalcation," and do not qualify the words "fraud," "embezzlement," or "misappropriation." But the opinion of the Supreme Court, of November 7, 1904, in Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. ——, seems to settle the question otherwise. The amendment of clause 2 of section 17 of the bankrupt act, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], made since the case of Crawford v. Burke arose, does not affect the question.

The bankrupt act of August 19, 1841, c. 9, § 1, 5 Stat. 440, used the following language:

"All persons whatsoever * * * owing debts which shall not have been created in consequence of a defalcation as a public officer; or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity * * * shall be deemed bankrupts * * * and may be so declared * * *."

The act of March 2, 1867, c. 176, § 33, 14 Stat. 533, used the following language:

"That no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act; * * *."

The act of 1898, § 17, cl. 4, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], reads:

"A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as * * * were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity."

While the question has not, so far as I am advised, been decided, it seems to me that the change in phraseology from "public officer" to "officer" shows an intent to change the meaning of the law in this respect. For authority supporting this view, we need go no further back than to the language so recently used by the Supreme Court in the above-mentiond case of Crawford v. Burke:

"Our own view, however, is that a change in phraseology creates a presumption of a change in intent, and the Congress would not have used such different language in section 17 from that used in section 33 of the act of March 2, 1867, c. 176, 14 Stat. 533, without thereby intending a change of meaning."

The substitution of the word "officer" for the phrase "public officer" cannot properly be considered unintentional. The exact phraseology of such legislation is of too great importance to justify such a presumption. The change of language, therefore, evidenced some change of meaning, and I have been unable to ascribe to it any other change of meaning than to include officers of private corporations. The word "officer" is clearly of broader meaning than the words "public officer." That a director and vice president of a private corporation, such as a national banking association, is an "officer" of such corporation, not only in popular language, but in the language of almost countless judicial decisions and law text-books, and the acts of Congress (see, for instance, section 1, cl. 19, Bankr. Act 1898, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3419]; sections 1783, 5207, 5208, Rev. St. [U. S. Comp. St. 1901, pp. 1213, 3496, 3497]), will not be disputed.

It is said in Collier on Bankruptcy (4th Ed.) p. 201:

"The term 'officer' probably means any public official who, from the nature of his duties, may be guilty of embezzlement, misappropriation, or defalcation in office. * * *"

No reason for this opinon is given. The cases cited as authority for this statement are: Morse v. Lowell, 48 Mass. 152; Richmond v. Brown, 66 Me. 373; Johnson v. Auditor, 78 Ky. 282; Courtney v. Beale, 84 Va. 692, 5 S. E. 708. I have been able to see only the two latter cases, but these do not in the least support the statement in the text. In the Virginia case cited is found the following:

"Abbott defines it [defalcation] to be 'the failure of one who has received money in trust, or in a fiduciary capacity, to account and pay over as he ought,' and it particularly applies, he says, to the acts of public and corporate officers."

And a reason of some force exists for the supposition that Congress intended by the change of language to extend the exception in clause 4 of section 17, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428] so as to include debts created by the fraud, or embezzlement, or misappropriation or defalcation of officers of private corporations. The Supreme Court, in Chapman v. Forsythe, 2 How. 202, 207, 11 L. Ed. 236, limited the meaning of the expression in the act of 1841, "any other fiduciary capacity," so that it did not include a fiduciary (other than an

executor, administrator, guardian, or "special" trustee) whose trust is one implied from his contract. In Hennequin v. Clews, 111 U. S. 676, 4 Sup. Ct. 576, 28 L. Ed. 565, Palmer v. Hussey, 119 U. S. 96, 7 Sup. Ct. 158, 30 L. Ed. 362, and Upshur v. Briscoe, 138 U. S. 365, 11 Sup. Ct. 313, 34 L. Ed. 931, arising under the act of 1867, the construction given this phrase in Chapman v. Forsythe is adopted as the proper construction under the act of 1867. See, also, 3 Words & Phrases, p. 2759. The exact meaning of the language "special trusts" or "technical trusts," used in Chapman v. Forsythe (page 207, 2 How., 11 L. Ed. 236), is not, perhaps, as clear as might be. But it seems clear that implied trusts—a term usually employed in distinguishment from express trusts—where the trust obligation is to be implied from the contract, are in many cases not to be held as embraced within the term "fiduciary capacity" as used in the acts of 1841 and 1867. The trust or obligation of officers of private corporations, who are given such control of the funds or credits of the corporation as to be able to commit embezzlement, misappropriation, or defalcation, is rarely or never created by the express terms of any writing. On the other hand, such trusts correspond to and satisfy the commonly accepted definition of implied trusts:

"Those which, without being expressed, are deducible from the nature of the transaction as matters of intent, or which are superinduced upon the transaction by operation of law, as matters of equity, independently of the particular intention of the parties." 2 Bouv. Dict. 754.

In drafting the act of 1898, Congress must be presumed to have known the limited meaning given by the courts to the expression "fiduciary capacity," and the employment of this often adjudicated expression indicates that it is used with the limited meaning given it under the former laws. The consequence, therefore, of again using the term "public officer" might have been to reduce the embezzlements and defalcations not excepted from discharge in bankruptcy to a minimum. The vast numbers of private corporations, the immense sums necessarily put under the control of the officers of such corporations, and the evil results of allowing dishonest officials of private corporations who have committed embezzlement, misappropriation, or defalcation to have discharges in bankruptcy from debts thus created, afford a sufficient reason for an intent on the part of Congress to forbid discharges of debts so created by such persons.

It is true that the courts may not, when called on, in cases such as this, to construe the meaning of the phrase "fiduciary capacity" as used in the act of 1898, so construe it as to exclude such officers of private corporations as was Harper. But even if so, this possibility does not seem to me to materially weaken the force of the reasoning above. Congress must be presumed to have known of the former adjudications, and there was, to say the least, a possibility that the courts would so construe this phrase as to exclude such officers. That this expression, as used in the act of 1898, will receive a limited construction, seems more than probable. See Bracken v. Milner (C. C.) 104 Fed. 522; In re Butts (D. C.) 120 Fed. 966, 971.

I am forced to the conclusion that the word "officer" includes an officer of a private corporation. If the bankrupt here was an "officer"

within the true intent of the present bankruptcy act, the stay order should be set aside, and the receiver left at liberty to proceed with his action in New York.

As is above suggested, it is possible that the obligation of a director and actual manager of such a corporation as a bank is so analogous to that of an administrator, executor, guardian, or technical trustee that he should be held to be one acting in a "fiduciary capacity." In 3 Thompson on Corporations, § 4009, it is said:

"The directors * * * of a corporation * * * occupy a fiduciary relation towards the stockholders, and are treated by courts of equity as trustees for them."

In Goodin v. Cincinnati Canal Co., 18 Ohio St. 169, 98 Am. Dec. 95, it is said:

"A director * * * is trustee for the company, and whenever he acts against its interests * * * he is guilty of a breach of trust."

And in innumerable judicial decisions similar language has been employed to define the relation between a director and his corporation.

It is also to be noted in the case at bar that the debt was created, as found by the court in Ohio, by acts amounting to fraud, embezzlement, misappropriation, or defalcation. Also that the fiduciary relation—if it be proper so to term it—existed independently of and prior to the creation of the debt. See Upshur v. Briscoe, 138 U. S. 365, 378, 11 Sup. Ct. 313, 34 L. Ed. 931; and Cronan v. Cotting, 104 Mass. 245, 6 Am. Rep. 232. But as a sufficient reason exists for deciding the matter before us in favor of the receiver, it is not necessary to reach a conclusion on this question.