## BLOEMECKE v. APPLEGATE.

(Circuit Court of Appeals, Third Circuit. April 4, 1921.)

No. 2578.

1. **Bankruptcy ⟨⟩391(3)—Proceedings on debt not dischargeable not stayed, unless they interfere with administration.**

Under Bankruptcy Act, § 11 (Comp. St. § 9595), authorizing stay of suit founded on a claim from which a discharge would be a release, proceedings by a creditor for body execution against bankrupt on a judgment for a debt which would not be released by the discharge in bankruptcy will not be stayed, since they do not interfere with the administration of the res in possession of the court.

2. **Bankruptcy ⟨⟩426(2)—Misappropriation by officer of private corporation not dischargeable.**

Under Bankruptcy Act 1898, § 17 (Comp. St. § 9601), excepting from release by discharge debts created by fraud or misappropriation while acting as an officer, which differed from the similar section in preceding acts by omitting therefrom the word "public" before "officer," any officer, private or public, is included, so that a debt against the president of a private corporation for misappropriation of funds is not released by discharge.

3. **Bankruptcy ⟨⟩426(2)—Misappropriation by president of corporation is while acting a "fiduciary capacity."**

A debt incurred by a president of a corporation in the exercise of his official duties, which amounted to fraud or misappropriation by him, is created while he is acting in a fiduciary capacity, within Bankruptcy Act 1898, § 17 (Comp. St. § 9601).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fiduciary Capacity or Character.]

4. **Bankruptcy ⟨⟩423(1)—Liability for property obtained by false pretenses not released.**

Bankruptcy Act 1898, § 17, subd. 2 (Comp. St. § 9601), excepting from release by discharge liabilities for obtaining property by false pretenses or false representations, includes liability for money so obtained, so that the liability of the president of a private corporation to it for the difference between the purchase price paid by him for property bought for the company and the price he stated to the company is not released by discharge.

Appeal from and Petition to Revise Decree of the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

In the matter of the voluntary proceedings in bankruptcy against Henry J. Bloemecke. A rule issued on bankrupt's petition against Charles L. Applegate to show cause why he should not be enjoined from further proceedings in the state court. A judgment against the bankrupt was discharged (265 Fed. 343), and the bankrupt appeals and files petition to revise. Affirmed.

Bilder & Bilder, of Newark, N. J. (Nathan Bilder, of Newark, N. J., of counsel), for appellant.

Howe & Davis, of Orange, N. J. (Thomas A. Davis, of Orange, N. J., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.   On September 8, 1910, the bankrupt, with others, organized the Realty Corporation of North America for the purpose of carrying on a general real estate business.   Bloemecke was elected president of the corporation.   Business was carried on by it from the time of organization until 1914.   Since then no business has been done, though the corporation is still in existence.   In October, 1910, the corporation had under advisement the purchase of a tract of land of about 77½ acres, called the Lindemeyer tract, on Ridgewood avenue, in Glen Ridge and Montclair, N. J.   Bloemecke represented to the board of directors that it would be advantageous to the corporation if negotiations were conducted by him as an individual and title was taken in his individual name.   Authority was given and the purchase was so made.   He reported to the company that he purchased the tract for $216,500.   The corporation subsequently learned that he paid only $201,500, and retained and applied for his own individual benefit the sum of $15,000 of the funds of the corporation.

In November following a tract of land of about 32 acres, known as the Lockwood tract, on Broad street, Bloomfield, N. J., was likewise purchased by Bloemecke, for the corporation, and he reported to the directors that he paid $54,500 for the tract, whereas in fact, as the corporation subsequently learned, he paid only $52,500, and retained $2,000 of the money belonging to the company for his individual benefit.

In the same month Bloemecke sold to the corporation a tract of land of 8 acres on Orange road, Montclair, N. J., which he had purchased, with the intention of turning the same over to the corporation, it is alleged, and represented that he paid $15,750 for it; but he actually paid only $14,500, and kept $1,250 of the money paid him by the corporation for his own benefit.   On these three transactions Bloemecke by fraudulent representations thus obtained $18,250.

On February 21, 1917, Charles L. Applegate, one of the stockholders of the corporation, filed a bill in the Court of Chancery of New Jersey on behalf of himself and other stockholders who might desire to join him, setting forth the above transactions, and prayed that Bloemecke be directed to account for and pay to the corporation the $18,250, with interest, costs, and counsel fee.   On the pleadings and proofs the court entered final decree on July 23, 1918, ordering that the said money which remained in Bloemecke's hands as trustee of the corporation be paid by him to the corporation, and that he pay, costs and a counsel fee of $500.

Bloemecke filed a voluntary petition in bankruptcy on September 5, 1918, and scheduled the $18,250 as a debt.   Application was made on May 27, 1919, to the Chancellor of New Jersey for a capias ad satisfaciendum against the body of Henry J. Bloemecke, and hearing thereon was set for June 17, 1917.   On June 9, 1919, Judge Haight, sitting in the United States District Court for the District of New Jersey, allowed a rule to show cause with ad interim restraint, returnable on June 16, 1919, on Charles L. Applegate, why he should not be enjoined and restrained from taking further proceedings in the Court of Chancery until Bloemecke's discharge in bankruptcy had been determined.

This rule was heard by Judge Lynch, who entered an order on April 19, 1920, dismissing it. The case is here on appeal from Judge Lynch's order.

Bloemecke's petition for rule to show cause was based on section 11 of the Bankruptcy Act of 1898 (Comp. St. § 9595), which provides that:

"A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition against him, shall be stayed until after an adjudication or the dismissal of the petition; if such person is adjudged a bankrupt, such action may be further stayed until twelve months after the date of such adjudication, or, if within that time such person applies for a discharge, then until the question of such discharge is determined."

In his petition, Bloemecke alleged that "the claim is not founded upon fraud or false representation, and is a claim from which a discharge in bankruptcy would be a release." In his answer to the petition, Applegate said that:

"The debt was created by fraud, embezzlement, misappropriation, and defalcation of the bankrupt, acting as an officer of said corporation, to wit, as its president, and while acting in a fiduciary capacity, to wit, while he was expending money of the corporation."

Section 17 of the act (Comp. St. § 9601) provides that:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (4) were created by· his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

[1] The $18,250, with interest, is a debt which Bloemecke owes to the corporation. This was decided by the Court of Chancery and admitted by the bankrupt in his schedules in bankruptcy. Proceedings on a debt which is not dischargeable should not be stayed by a bankruptcy court, unless they interfere with the administration of the res in possession of that court. In re Dowie (D. C.) 202 Fed. 816. The proceedings in the Court of Chancery do not in any way interfere with the administration of the assets in bankruptcy. It is necessary, therefore, to determine whether or not the debt in question is dischargeable in bankruptcy. If it is, proceedings should be stayed, and the order of the District Court reversed; if it is not, the order should be affirmed. The bankrupt maintains that the debt is dischargeable because it was not created by his fraud, embezzlement, misappropriation, or defalcation "while acting as an officer or in any fiduciary capacity."

It is not denied that Bloemecke was president and director of the Realty Corporation of North America at the time the acts were committed of which Applegate complained in the proceedings in the Court of Chancery. That, while president and director, Bloemecke perpetrated a fraud upon the corporation by means of which he secretly obtained $18,250, cannot be denied. This has been established in the Court of Chancery. He was not,· however, he contends, in purchasing the said tracts of land, doing so in the exercise of his official duty as president or director of the corporation, and therefore does not come

within the exceptions of section 17 of the act. The bankrupt was one of the influential men among the officers and directors, if not the most influential. He, with one Bradley, appears to have been the leading spirit of the organization of the corporation. He was elected its president, and was intrusted with its funds, which he deposited in his own personal account. He had been engaged in real estate business before the organization of the corporation, and the officers of the corporation seemed to rely upon his judgment in real estate matters, and intrusted to him the purchase of two of these tracts of land. In the absence of any statement, brought to our attention, in the charter or by-laws of the corporation, or in the evidence, of what his duties as president were, when the work which he actually performed for the corporation is considered, we are unable to say that they were not in some measure performed in the exercise of his official duties.

[2] The officer referred to in section 17 (4) of the act includes an officer of a private corporation. In section 1 (1) of the act of 1841 (5 Stat. 440), Congress provided that:

"All persons whatsoever * * * owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any *other* fiduciary capacity * * * shall be deemed bankrupts."

Section 33 of the act of 1867 (14 Stat. 533) provides that:

"No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a *public* officer, or while acting in any fiduciary character, shall be discharged under this act."

The act of 1898 omitted the word "public," used in the Acts of 1841 and 1867. This must have been done for the purpose of enlarging the number of persons who could create a debt by fraud, embezzlement, misappropriation, or defalcation without being able thereafter to secure a discharge in bankruptcy. Any "officer," private or public, is included in that term in the act of 1898. In re Harper (D. C.) 133 Fed. 970; In re Gulick (D. C.) 190 Fed. 52; Haggerty v. Badkin, 72 N. J. Eq. 473; 66 Atl. 420. Under the provisions of the acts of 1841 and 1867, the position of Bloemecke might have been tenable, but not under the act of 1898. We are of the opinion that Bloemecke created the debt by fraud while acting as an officer of the Realty Corporation of North America, and is not released from it by a discharge in bankruptcy.

[3] The question of whether or not Bloemecke was acting in a fiduciary capacity has been settled, so far as the Court of Chancery of New Jersey is concerned, by its decree, which has become final. That court held that Bloemecke was trustee for the Realty Corporation of North America and its stockholders, and that the $18,250 was the property of the corporation. "Bloemecke, as president of the company and as the custodian of the fund intrusted to him, is bound satisfactorily to account for what he did with the stockholders' money." The bankrupt relies upon such cases as Chapman v. Forsyth, 43 U. S. (2 How.) 202, 11 L. Ed. 236, which construed the acts of 1841 and 1867. The act of 1841 referred to "public" officers and express or technical trusts of executors, administrators, guardians, and trustees. The act of 1867 omit-

ted the words "executor," "administrator," "guardian," and "trustee," and also the word "other," before "fiduciary." The act of 1898 omitted, not only these, but also the word "public," before "officers," contained in both of the prior acts. Congress doubtless had in mind that the courts had construed the term "fiduciary" as meaning an express, technical trust, and by omitting those words from the act of 1898 it must have intended to extend the class coming within the meaning of "fiduciary capacity." Fulton v. Hammond (C. C.) 11 Fed. 291; In re Harper, supra; Haggerty v. Badkin, supra; In re Gulick (D. C.) 186 Fed. 350.

In the case of Haggerty v. Badkin, Vice Chancellor Pitney after an exhaustive review of the leading cases, both state and federal, said that:

"Money is received or detained by one from another in a fiduciary capacity, when, in the mind of the person handing the money to the other, as such mind is known to that other, it does not become the absolute money and property of that other to do with as he chooses as his own money, but is received by him for a particular purpose in which a person or persons other than the person receiving it is or are interested."

Applying this definition to Bloemecke's transactions, he was acting in a "fiduciary capacity," for the money delivered to him was not his own, to do with as he chose, but, on the contrary, was received by him for a particular purpose, in which the corporation was interested.

The case of Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, is the only case, brought to our attention, of the Supreme Court of the United States construing the words "fiduciary capacity" in the act of 1898. That was a case in which a bankrupt, who was a broker, bought and sold stocks on a margin for his clients. In the course of his business he bought and carried for Burke some stocks, which he sold without Burke's knowledge and doubtless mingled the proceeds of sale with his own money. Pending suit in trover to recover damages for converting the stock, Crawford obtained his discharge in bankruptcy, and pleaded it puis darrein continuance. The Supreme Court of Illinois held that the discharge was not a bar to recovery, but the Supreme Court of the United States reversed the Illinois decision, on the ground that there was "no evidence that the frauds perpetrated by the defendants were committed by them in an official or fiduciary capacity." In transactions of a mercantile character, such as where a factor sells goods for a principal and mingles the proceeds of his sales with his own money, and the like, an implied contract arises, and the natural remedy is by action of assumpsit at common law. In such transactions, courts generally hold that factors are not acting in a "fiduciary capacity." Haggerty v. Badkin, supra.

The facts in the instant case are very different from those of Crawford v. Burke, supra, and those cases generally construing the relations of factor and principal in commercial transactions. Keeping in mind the amendments, bearing upon this question, of the acts of 1841 and 1867, we are constrained to conclude that Bloemecke created this debt by his fraud while acting in a fiduciary capacity.

[4] If, however, we are wrong in so holding, then subsection 2 of section 17 applies. This provides that:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations."

Money is property within the meaning of this statute. Forsyth v. Vehmeyer, 177 U. S. 177, 20 Sup. Ct. 623, 44 L. Ed. 723. It is not denied, and in fact cannot be denied, that Bloemecke obtained the $18,250 by false pretenses and false representations, and on these pretenses and representations, that he had paid $18,250 for the three properties more than he actually had paid, he secured the money.

This debt, therefore, is a liability from which a discharge in bankruptcy will not release Bloemecke. It was accordingly not error for the District Court to refuse to stay the proceedings in the Court of Chancery.

The order of the District Court, dismissing the petition of the bankrupt, is therefore affirmed.