## LAND TITLE & TRUST CO. v. ASPHALT CO. OF AMERICA.

(Circuit Court, D. New Jersey. June 9, 1902.)

No. 29.

1. RECEIVERS—GROUNDS FOR REMOVAL.

A receiver appointed on account of his special fitness for conducting the practical business in which a corporation was engaged, pending proceedings for its liquidation, and on the recommendation of a majority of the creditors, will not be removed on the petition of a single creditor, whose claim is comparatively small, where no showing of incompetency or mismanagement or fraudulent conduct is made, merely because his connection with the corporation was such that at some future stage of the case he may not be a proper man to enforce rights which it may possibly be necessary or desirable to assert against its officers or promoters.

In Equity.  Sur petition of William C. Bullitt for the removal of a receiver.

John Douglass Brown, for the motion.

Charles L. Corbin, Joseph S. Auerbach, and Charles C. Deming, opposed.

PER CURIAM.  This petition has been presented to the court on a former occasion.  It was left with me, and I read it with great care. I find in it no verified charges against Mr. Mack which in my opinion require the court to order his removal at this time.

When the original bill was filed in this case, it was deemed essential for the protection of the certificate holders and creditors and all of the parties interested in the Asphalt Company of America, or the National Asphalt Company, that the business should be continued, and, in order that it might be continued, it was necessary that some practical man— some man who was acquainted with the practical workings of the asphalt business—should take charge of the 69 or 89 subsidiary companies which composed this corporation, the stock of which was held by this National Asphalt Company; somebody should be appointed receiver who understood the details of the workings of these companies, in order that the business might be carried on and the assets conserved, and that from them, by the workings of the subsidiary companies, there should be realized a sufficient income, or as much income as was possible, to be applied, under the deed of trust, to the payment of the interest on the certificates.

Mr. Biddle, who was the chairman of a committee—perhaps self-constituted, but representing more than a majority of the certificates of the Asphalt Company of America; that is, something over $15,000,000; I do not know exactly how many, but more than a majority—said to the court that this business ought to be continued, and that no more proper person could be found by the court than Mr. Mack, and that, while Mr. Mack had been an officer in one of these companies, at the same time he was, perhaps, one of the very few men in the country who could be relied on to prosecute this business successfully; and thereupon the court made the appointment.  There is nothing before the court here at this time which induces the court to think that the representations made by Mr. Biddle are not strictly in accordance with the facts.  There is no allegation or charge made in this petition of Mr. Bullitt's that Mr. Mack is not satisfactorily discharging that part of the business of the receivership which the court intrusted to him.  For aught that appears, and as I have reason to believe, the business is still being continued on as favorable a basis as it is possible for it to be continued on, and that the interests of the certificate holders and of the creditors of these various companies, and stockholders, and of all persons who have any claims against the company—their interests are being conserved and looked after by Mr. Mack at this time.  Now it is suggested in the petition that this Biddle committee is self-constituted, and that their recommendation should be disregarded by the court, and that the court should listen to this petitioner, who has $10,000 worth of certificates; but it seems to me that in regard to the practical working of this enterprise the court

should look to the wishes, and pay more regard to the wishes, of $15,000,000 or $16,000,000 or $20,000,000 of certificate holders than it should to one holder of simply $10,000 worth of certificates. If I should set the precedent of listening to each individual certificate holder, the probability is that I would not be able to find that able and disinterested gentleman of whom the counsel speaks, to act as receiver, against whom a single certificate holder might not be found who would be anxious to come into court and ask for his removal.

Now it is suggested in the petition that the court has not been made acquainted with the holders of the certificates whom Mr. Biddle's committee represents. That is true. I do not know who they are. I only know they are represented to be a majority of all. But neither do I know when or how or for what purpose the $10,000 of certificates which the petitioner holds were acquired, or if they were not acquired (and they may have been, for aught appears) simply for the purpose of qualifying Mr. Bullitt to appear in this suit. Maybe so, and maybe not. Perhaps it is not.

It is stated in the petition that Mr. Mack said at one time that the earnings of this company were a certain sum of money, and they turned out to be much less. The allegation is not that that statement was made in fraud, but the court is asked to infer from the fact that, although vice president, he was unacquainted with the financial status of the company, and therefore he is an unfit man to be intrusted with its management. The court is unwilling to draw any such inference, because it knows very well that many a practical man is no financier, and many financiers rely upon practical men to carry out the workings of their undertakings.

Now the only other reason suggested as to the removal of Mr. Mack at this time is that he is an unfit person, because he is not in a position to investigate the relations between the Asphalt Company of America and the National Asphalt Company, and that because the Asphalt Company, or the National Asphalt Company, and the Asphalt Company of America, together, had issued $50,000,000 worth of stock certificates, and obligations of various sorts, there had been some fraud in the promotion of this company, but no express charge of fraud is made. I infer that from what is called the "overcapitalization." While $50,000,000 seems like a great deal of money, and it is a great deal of money—but it might not be a great deal of money for what one may acquire in these days—the mere fact that there was a large capitalization, and the assets did not realize or were not worked to the extent of producing an income on them all is of itself no evidence of fraud.

Some time—not, perhaps, just now, but some time—it may be necessary for the receivers to inquire into the liability of the subscribers to this stock, and it may be necessary for them to inquire into the question as to whether there was any such fraud in the promotion of these enterprises as would enable them to recover anything on behalf of the certificate holders; but it seems to me that this is not a time for such an inquiry, or, at any rate, for the enforcement of, or attempt to enforce, any liability by reason of it. Before the receivership is wound up—before these receivers are discharged—if it should appear that, in

the opinion of counsel, there is any such liability either on behalf of the original subscribers to the stock of the Asphalt Company of America, notwithstanding the clause in the charter, or that it should appear, in the opinion of counsel, that there is a liability for false representations made by responsible promoters, why, the court would feel that the receivership should not be wound up until the parties who are so advised have had an opportunity, through the receivers, to bring these questions before the court for determination; but, in my opinion, the proper plan is not to go in the first instance to the court, and direct investigations to be made which are—perhaps would be—productive of no good result. But there ought to be such facts and circumstances laid before the receivers themselves as would justify them in bringing the suit, or there ought to be such facts laid before them as, in the opinion of counsel of parties who lay them before the receivers, would justify the bringing of suit. If then the receivers refuse to bring such suits, or do whatever would seem to be necessary for the enhancement of the fund and the protection of the certificate holders, an appeal might be had from the decision of the receivers to the court; and if the court is of opinion that there is a question which ought, in fairness, to be litigated, the court might direct the receivers to bring such suit upon such terms as the court might think reasonable and proper. If they should suggest that it ought to be brought against Mr. Mack himself, as one of the promoters, and Mr. Mack did not then see the propriety of his withdrawal from the receivership, why, the court might suggest it to him in a way which he would recognize as being entirely proper. Of course, Mr. Mack, as receiver, could not bring any suit against himself—the court would not expect him to; and, if such suit were necessary, why, Mr. Mack would be obliged to get out of the way. But, as I said in the beginning, Mr. Mack was appointed one of the receivers in this case for the purpose of conducting the practical management and working of the organized companies, and I do not know that there has any charge been made against him that he is unfit for that position. Under all the circumstances, the court will decline at this time to make any order for Mr. Mack's removal.

The court will also decline to entertain the petition of Mr. Bullitt, or make the order which has been suggested therein. Of course, I will not say, on the petition as it stands, that the court is unwilling to grant the relief. It is unnecessary that the court should require the receivers, or anybody else under its jurisdiction, to make an answer to charges which the court does not feel justified at this time in acting upon.