## MATHIEU v. GOLDBERG.

(Circuit Court, S. D. New York. August 22, 1907.)

1. BANKRUPTCY—EFFECT OF DISCHARGE—LIABILITIES DISCHARGED.

   The liability of a factor to his principal for the proceeds of goods consigned to and sold by him is one dischargeable in bankruptcy, and it is immaterial that he was to receive for his services a share of the profits of the sales, instead of the usual percentage commission.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 799.]

2. SAME—DEBTS CREATED BY FRAUD OR MISAPPROPRIATION AS AGENT.

   In the absence of an agreement to the contrary, a principal has the right at any time to retake possession of goods consigned to a factor on payment of advances and liens; and where a factor, without legal excuse, refused to return goods on demand of the consignor, his liability therefor is a debt created by his fraud, embezzlement, or misappropriation while acting in a fiduciary capacity, within the meaning of Bankr. Act 1898, c. 541, § 17a (4), 30 Stat. 551 [U. S. Comp. St. 1901, p. 3428], form which he

is not released by a discharge in bankruptcy; and this rule applies, although by agreement he was to be paid a part of the profits for his services, instead of a commission.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 795.]

3. FACTORS—CONVERSION BY FACTOR—REFUSAL TO RETURN GOODS.

A factor was not legally justified in refusing to return goods consigned to him, on demand of the consignor, because of advances made by him thereon which had not been repaid, where the consignor offered to pay such advances on receipt of an itemized statement of the same, which the factor did not furnish.

In Equity.

Gould & Wilkie (Learned Hand, of counsel), for complainant.
Tison & Goddard (Everett P. Wheeler, of counsel), for defendant.

HOLT, District Judge. This is a suit in equity, brought by the complainant, a French manufacturer and merchant doing business at Lyons, France, to obtain an accounting from the defendant, who acted as the complainant's factor or selling agent at New York. The defendant, since the suit was begun, has been adjudicated a bankrupt. He does not contest complainant's right to an account. The substantial point actually litigated is whether the defendant's liability to the complainant is one dischargeable in bankruptcy.

The legal relation between Mathieu and Goldberg was that of principal and factor. I do not think that the fact that Goldberg was to be paid for his services half the profits, instead of the usual commission, changed or affected that relation. Goldberg's liability, therefore, for the proceeds of all the silk goods and of all the gold thread which he had sold before receipt of Mathieu's letter of July 18, 1904, demanding the return of all such goods remaining unsold, was dischargeable in bankruptcy. Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147. But I think that his liability for the goods unsold at the time of his receipt of such demand, which must have been not later than August 1, 1904, or for their proceeds, if since sold, is, on the evidence, a debt which, within the meaning of section 17 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3428]), was created by his fraud, embezzlement, or misappropriation while acting in a fiduciary capacity. His grounds of refusal to return the goods demanded, in my opinion, were not only legally untenable, but were interposed in bad faith, as a ground for misappropriating the goods, or, at least, for coercing Mathieu into acquiescence in unjust demands.

His claims that the goods should have been charged to him at the price stated in the consular invoices, and not at the cost price, that Mathieu had no right to sell to other Americans, and that he was therefore entitled to half the profits of goods sold to other Americans, and that the agreement was to continue for six years, are entirely unsupported by any evidence, are directly contradicted by the terms of the contract stated in Mathieu's letter of August 8, 1903, by the affirmative evidence of Mathieu and Bergmann, and, on the question of the cost price, by the course of dealing between the parties during many months before the question was raised.

The claim that Mathieu is liable to Goldberg for damages resulting from neglect to comply with orders is unsustained by evidence.

The defense that Goldberg had a right to detain the goods until his advances were paid seems to me, under the circumstances, inapplicable. Goldberg had, of course, a right to reimbursement for his advances; but Mathieu, in his letter of September 6th, demanded an itemized statement of them, and offered to settle for them at once if it was furnished. Goldberg never gave any statement of his disbursements, except his claim for the lump sum of $1,583.60 in his letter of August 24, 1904. It was Goldberg's duty to furnish an itemized statement in response to Mathieu's demand, and he could not, while he neglected to furnish it, justify a detention of the goods on the ground that his advances must first be paid. Moreover, he did not, at the time, put his refusal to deliver the goods on that ground.

The claim that, because Goldberg's compensation was to be half the profits, he had an absolute right to detain the goods until he could sell them, seems to me untenable. On that theory he could detain them forever. Assuming that he was entitled to a reasonable time in which to sell them, he had had about a year; and his letters contain repeated assertions to the effect that they could not be sold at all in New York. But the general rule I understand to be that a principal, in the absence of an agreement, express or implied, to the contrary, has a right at any time to retake possession of unsold goods consigned to a factor, on payment of all advances and liens (19 Cyc. p. 117, and cases cited); and I do not think that the fact that Goldberg, under the arrangement, was to be paid for his services by a part of the profits, instead of by the usual percentage, makes the rule inapplicable.

Upon the whole case I am satisfied that all of Goldberg's grounds of refusal to deliver the goods unsold were sham excuses, fraudulently made to cover the deliberate and intentional detention of the goods without right. A careful reading of Goldberg's letters, the peculiar obscurity of which makes it difficult at first to understand them, creates an unfavorable impression. His repeated intimations that, if his demands were not acceded to, there was danger of a sale of the goods by the revenue authorities, are very suggestive.

I have signed the decree submitted by the complainant, with certain modifications.