### CULP v. ROBEY. (No. 7080.)*

Court of Civil Appeals of Texas. Austin.
April 20, 1927.

Rehearing Denied May 11, 1927.

1. Bankruptcy ⬅️435—Where plaintiff's petition alleged discharge in bankruptcy but claimed exception of debt sued on, general demurrer raised defense of discharge in bankruptcy.

Although general rule is that burden of allegation and proof of discharge in bankruptcy is upon defendant, where plaintiff's petition alleged discharge in bankruptcy but set up facts which he claimed excepted the debt sued on from operation of discharge, so that every fact necessary to determine effect of discharge on plaintiff's cause of action was affirmatively set forth, general demurrer raised defense of discharge in bankruptcy.

**2. Appeal and error ⊕882(5)—Error in holding that demurrer raised defense of discharge in bankruptcy where petition alleged discharge but claimed exception of debt sued on held invited.**

Error, if any, in lower court's holding that demurrer raised defense of discharge in bankruptcy where petition alleged discharge, but claimed that debt sued on was excepted, *held* purely technical and invited.

**3. Bankruptcy ⊕426(2) — Term "officer" in Bankruptcy Act includes officers of private corporations (Bankruptcy Act, § 17, subd. 4 [U. S. Comp. St. § 9601]).**

Term "officer," as used in Bankruptcy Act, § 17, subd. 4 (U. S. Comp. St. § 9601), excepting certain debts from operation of discharge, is not restricted to public officers, but includes officers of private corporations.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

**4. Bankruptcy ⊕426(2)—Words "fiduciary capacity" in Bankruptcy Act import technical trust, actually and expressly constituted, and not such only as law implies (Bankruptcy Act, § 17, subd. 4 [U. S. Comp. St. § 9601]).**

Words "fiduciary capacity," as used in Bankruptcy Act, § 17, subd. 4 (U. S. Comp. St. § 9601), excepting certain debts from release of discharge, import technical trust, actually and expressly constituted, and not such merely as law implies, and have no application to debts or obligations merely because they were created under circumstances in which trust or confidence in popular sense of those terms was reposed in debtor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fiduciary Capacity or Character.]

**5. Bankruptcy ⊕426(2) — Partner invested with sole control of partnership assets does not occupy relation of trustee or fiduciary toward copartners, so as to bring his misappropriation of partnership property within exceptions to release by discharge in bankruptcy (Bankruptcy Act, § 17 [U. S. Comp. St. § 9601]).**

Partner, even though invested under partnership agreement with sole management and control of partnership assets and business, does not occupy relation of trustee or fiduciary toward copartners or any other relation to them which would bring his misappropriation or conversion to his own use of partnership property within exceptions to release by discharge in bankruptcy enumerated in Bankruptcy Act, § 17 (U. S. Comp. St. § 9601).

**6. Bankruptcy ⊕426(2)—Partner cannot be guilty of embezzlement of partnership property within meaning of Bankruptcy Act (Bankruptcy Act, § 17 ['U. S. Comp. St. § 9601]; Pen. Code Tex. 1925, arts. 1534–1544).**

Partner cannot be held guilty of embezzlement, under Pen. Code Tex. 1925, arts. 1534–1544, of partnership property within meaning of Bankruptcy Act, § 17 (U. S. Comp. St. § 9601), excepting certain debts from release of discharge.

**7. Joint-stock companies and business trusts ⊕15(1)—Attempt to limit liability of business concern, in law amounting to partnership, to contribution each partner makes, is void.**

Attempt to limit liability of business concern which in law amounts to partnership, whether in form of an ordinary partnership or joint-stock company, to contribution that each partner has made or has contracted to make to partnership assets, is void, since, when parties have by their contracts created a relationship, they cannot by contract alter or change its legal effect.

**8. Joint-stock companies and business trusts ⊕1—Where partnership is created by contract, designation of one in fact a partner as trustee does not create trust.**

Where partnership is in fact created by contract, mere designation of one who is in fact a partner by some official title or as trustee does not in law create an office or trust, since relation of parties will be determined by legal effect of instrument creating relation.

**9. Joint-stock companies and business trusts ⊕1—Trust instrument, investing legal title and management of business in one member and limiting liability of certificate holders, created "partnership."**

Trust instrument, investing legal title to property and exclusive management of business in member called trustee, who was deprived of power to bind shareholders personally on any obligation, and which provided for issuance of certificates which were assignable and limited liability of certificate holders, created relation of partners between certificate holders, including member called trustee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partnership.]

**10. Bankruptcy ⊕426(2) — Where business concern in law amounted to partnership, misappropriation of funds by member having sole control of assets was "debt" discharged in bankruptcy (Bankruptcy Act, § 17, subd. 4; subd. 2, as amended by Act Cong. Feb. 5, 1903, § 5 [U. S. Comp. St. § 9601]).**

Where business concern operating under articles of agreement and declaration of trust was in law a partnership, misappropriation of funds by member having sole management and control of assets and business was a "debt" or obligation, as to which his discharge in bankruptcy constituted a release under Bankruptcy Act, § 17, subd. 4, and subdivision 2, as amended by Act Cong. Feb. 5, 1903, § 5 (U. S. Comp. St. § 9601).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Suit by R. E. L. Culp, as trustee of the Coleman Trust Company, against B. F. Robey. From a judgment dismissing plaintiff's suit, plaintiff appeals. Affirmed.

Critz & Woodward, of Coleman, for appellant.

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Dibrell & Snodgrass and J. B. Dibrell, Jr., all of Coleman, for appellee.

McCLENDON, C. J. Suit by appellant, Culp, as trustee of Coleman Trust Company, "an unincorporated association and business trust," against B. F. Robey, to recover on two promissory notes alleged to represent "the amount of certain funds of the Coleman Trust Company and misappropriated by B. F. Robey while acting as trustee of said Coleman Trust Company." The trial court sustained a general demurrer to plaintiff's petition and dismissed the suit, and Culp as trustee has appealed.

The general demurrer was manifestly sustained upon the ground that the indebtedness sued upon had been released by discharge in bankruptcy which the petition disclosed.

The appeal raises two questions: First, whether the defense of discharge in bankruptcy can be availed of by general demurrer where the facts embracing such defense are affirmatively alleged in plaintiff's petition; and, second, whether the debt sued upon comes within subdivision 2, of section 17 of the Bankruptcy Act, as amended in 1903 (U. S. Comp. St. § 9601), as being a liability for obtaining property by false pretense or false representations or for willful and malicious injury to the property of another, or within subdivision 4 of section 17, as being a debt created by the fraud, embezzlement, misappropriation, or defalcation of the bankrupt while acting as an officer or in a fiduciary capacity.

The petition without question asserts a cause of action, unless the allegations show that the debt sued upon was released by discharge in bankruptcy; and whether it was so released depends upon whether it falls within subdivision 2 or subdivision 4 of section 17 of the Bankruptcy Act.

The allegations of plaintiff's petition material to the issues thus raised are the following:

The Coleman Trust Company was an "unincorporated association and business trust," operating under articles of agreement and declaration of trust, dated April 1, 1917. Robey was a member of the trust company and signed with other members the declaration of trust, and he was designated as sole trustee. The purpose for which the trust was created was that of "a general loan and discount business." The trust instrument is not shown in the record, but the petition sets forth in general terms its provisions under which the trustee was invested with legal title to all property of the company and was given exclusive management and exclusive possession and control of the assets thereof, with power to borrow money and create debts. The beneficial interest in the company was represented by 250 shares of $100 each for which the trustee was to issue certificates signed by him as president and by the secretary, and these shares were assignable; and it was provided that the trust should not be dissolved by the death of any certificate holder or the assignment of his shares. The trustee was by express declaration deprived of the power to bind any of the shareholders personally upon any obligation, or to call upon them for any assessment other than for unpaid subscriptions, and the shareholders were not to be liable for any contract of the trustee or the trust estate. Annual meetings of the shareholders were provided for and special meetings might be called by the trustee. Robey acted as trustee from the inception of the association until November 16, 1921, when he resigned, and Culp was appointed or elected in his stead.

The debt sued upon was represented by two notes, one dated September 27, 1920, for $500 principal, and signed "B. F. Robey," and the other of March 18, 1920, for $8,946.42 principal, signed "B. F. Robey & Co." The petition alleges that these notes were made without the knowledge or consent of the stockholders, and represented amounts which Robey had from time to time while he was trustee wrongfully and fraudulently taken from the assets of the trust estate and converted to his own use. With reference to the larger of these notes, signed "B. F. Robey & Co.," a copartnership composed of B. F., W. A., and S. E. Robey, it was alleged that the other members of the copartnership had no knowledge of its execution, that the copartnership did not receive any of the proceeds, and that the note was signed by B. F. Robey and represented his own defalcations and misappropriations. The petition charges, in express language, that the misappropriations were under such circumstances as to amount in effect to obtaining property of the trust estate under false pretenses and false representations, and to a willful and malicious injury to the property of the trust estate, and also amounted to fraud, embezzlement, misappropriation, and defalcation of Robey while acting as an officer of the trust company or in a fiduciary capacity. The petition alleges that on or about the ——— day of ———, 1922, Robey's petition in bankruptcy was filed, and that each of the members of the firm of B. F. Robey & Co., including the appellee, "have been duly adjudged a bankrupt since the execution of said note and since the maturity of same, and have received their discharge in bankruptcy."

Defendant's answer, beside general demurrer and various special exceptions, sets up specifically Robey's discharge in bankruptcy, and pleads such discharge as a defense to the suit.

By supplemental petition, the plaintiff alleged that the discharge was inoperative because the debt sued upon came within the provisions of subdivisions 2 and 4 of section

17 of the Bankruptcy Act as pleaded in the original petition. The supplemental petition is decidedly more prolix than the original petition, but adds nothing materially to its allegations further than that the powers of the trustee under the declaration of trust are set forth in more detail.

We think this statement of the pleadings sufficient to a determination of the issues involved.

The first question is one of practice, and we will dispose of it briefly.

[1] It is a well-established rule that the burden both of allegation and proof of a discharge in bankruptcy is upon the defendant; and, while conceding that the same rule applies to the defense of discharge in bankruptcy as to the defense of limitation, and ordinarily it must be raised either by special exception or special plea, we overrule appellant's contention, and do so for the following reasons: The petition contains an admission designedly made of the discharge in bankruptcy, and manifests a purpose of meeting any defense based thereon by allegations seeking to bring the debt sued upon within one or more of the classes of obligations embraced in subdivisions 2 and 4 of section 17 of the Bankruptcy Act, as to which a discharge in bankruptcy is not a release. But for this purpose the unqualified admission in plaintiff's · petition of the bankruptcy discharge is meaningless and has no place therein, and the allegations with reference to the manner in which the indebtedness represented by the notes was created are unnecessary. Certainly it was not necessary for the defendant to offer proof of the discharge, where it was admitted by the plaintiff in his petition, and the fact that he set up the discharge as a release from the debt sued upon was an affirmative urging of the defense. Upon a trial upon the merits, the discharge would be a perfect defense without other proof thereof than the admission in plaintiff's petition, unless the circumstances alleged therein excepted the debt sued on from the operation of the discharge. Every fact necessary to determine the effect of the discharge on the cause of action which plaintiff alleged was affirmatively set forth in plaintiff's petition, and there was no issue of fact for a judge or jury, if the facts alleged by plaintiff showed affirmatively that the discharge operated upon the debt. Under these circumstances we are unwilling to apply the general rule that the general demurrer did not raise the defense of discharge in bankruptcy. The theory of the case as presented in the trial court being manifestly the correctness of the trial court's ruling upon the point of law as to the effect of the discharge in bankruptcy upon the debt pleaded by plaintiff, that theory will be preserved in this court, and the action · of the trial court sustained, unless its ruling upon the question stated was erroneous.

[2] The error, if any, in treating the general demurrer as raising the issue of discharge in bankruptcy, was, under the circumstances, purely technical, and was invited.

We think the trial court correctly held that the debt sued upon, although created under the circumstances detailed in plaintiff's petition, was released by Robey's discharge in bankruptcy.

Subdivisions 2 and 4 of section 17 of the Bankruptcy Law of 1898 as originally enacted, which are alone involved in this decision, except from the release of a discharge debts which:

"(2) Are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another."

"(4) Were created by his [the bankrupt's] fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." 30 Stat. L. 550.

In 1903, section 17 was amended. By this amendment subdivision 4 was re-enacted without any change in language. Subdivision 2 was amended by adding certain classes of obligations not here involved, and in other respects so as to read:

"(2) Are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another." 32 Stat. L. 798.

Prior to this amendment there was some conflict of decision as to whether the words in subdivision 4, "while acting as an officer or in any fiduciary capacity," were limited in application to defalcations, or whether they applied also to fraud, embezzlement, and misappropriation, until this question was set at rest by the Supreme Court of the United States in Crawford v. Burke, 195 U. S. 176, 25 S. Ct. 9, 49 L. Ed. 147, wherein it was held that the fraud which was excepted from the release of a discharge must be committed while the bankrupt was acting as an officer or in a fiduciary capacity. This holding was followed in Bullis v. O'Beirne, 195 U. S. 606, 25 S. Ct. 118, 49 L. Ed. 341, and Tindle v. Birkett, 205 U. S. 183, 27 S. Ct. 493, 51 L. Ed. 762.

In reaching this conclusion, the court laid much stress upon the fact that under subdivision 2 where fraud was not modified, the debt based thereon in order to be released by the discharge must be reduced to judgment; whereas under subdivision 4 the debt created by fraud was only required to be a liability. It is now contended by appellant that any liability created by fraud comes within subdivision 4, but no authority is cited which supports this contention. We find the following in the 1926 Edition of Black on Bankruptcy (page 1545), with reference to the effect of this amendment, after referring to the reasoning in Crawford v. Burke:

"And since Congress, in amending the section has omitted all mention of judgments on claims founded on frauds, this argument has lost its weight. Indeed, the significant omission of this phrase might support an argument that it was the intention of Congress to remove the limitation which required such claims to be reduced to judgment, and to provide, instead, that all claims 'created by the fraud' of the bankrupt should be excepted from the discharge. And it is so held in some of the cases."

The following cases are cited in support of this quotation: In re Butts (D. C.) 120 F. 996; Frey v. Torrey, 175 N. Y. 501, 67 N. E. 1082. Both of these cases, however, were decided prior to the decision in Crawford v. Burke. In fact, Frey v. Torrey is specifically alluded to in the opinion in Crawford v. Burke.

We have made a very careful examination of the authorities since the enactment of this amendment, and, while we have not found the effect of the amendment discussed in any of them, it is referred to, and the decision in Crawford v. Burke has been uniformly followed. In re Harper (D. C.) 133 F. 970; Mackel v. Rochester (C. C. A.) 135 F. 940; Harper v. Rankin (C. C. A.) 141 F. 626; Barrett v. Prince (C. C. A.) 143 F. 302; In re Adler (C. C. A.) 144 F. 659; In re Adler (C. C. A.) 152 F. 422; Mathieu v. Goldberg (C. C.) 156 F. 541; In re Camello (D. C.) 195 F. 632; In re Toklas (D. C.) 201 F. 377; In re Metz (C. C. A.) 6 F. (2d) 962; In re Harber (C. C. A.) 9 F. (2d) 551. If there are any cases to the contrary, they have escaped our notice; and there seems to be a uniformity of holding that the amendment of 1903 wrought no change in the construction of subdivision 4 of section 17.

Independently of the adjudicated cases, we think clearly the same construction should be given subdivision 4 that was given it prior to the amendment of 1903. The re-enactment of that subdivision in the identical language of the original act and after it had been construed by the Supreme Court of the United States, would carry with it the necessary implication that no change was intended to be made in the law as embodied in that section. The amendment of subdivision 2 shows a manifest purpose to omit from the exceptions to the release of a discharge the debts created by fraud that were originally embraced in subdivision 2; and with reference to the other classes of obligations dealt with in that subdivision to substitute liabilities thereon for judgments. If the Congress had intended that obligations created by fraud generally should be excepted from the release of discharge there would have been no necessity whatever of changing the language of subdivision 2, except by substituting "liabilities" for "judgments." We find no basis for holding that the amendment of 1903 wrought any change in the construction of subdivision 4 as enunciated in Crawford v. Burke.

The gist of the petition, in so far as it seeks to avoid the effect of the discharge as a release, is that the debt sued upon was created by the fraud, etc., of Robey while he was acting as trustee and officer of the trust company, with relation to funds which came into his hands and were held by him as and were in fact assets of the trust company. The contention that the debt or liability thereby incurred arose in any sense through obtaining property by false pretenses or false representations may be dismissed with little elaboration. The petition affirmatively shows that the property which Roby is charged with having misappropriated came into his hands rightfully. There is no intimation that he obtained possession of it by any false device, pretense, or representation. The wrongful act complained of relates solely to the manner in which he disposed of the property and not to the method by which he obtained possession of or control over it. The petition does allege that he concealed from the other shareholders his defalcations, and made false and fraudulent representations to them in that regard. But all of this had to do solely with the disposition of the property and not with its acquisition.

To come within the exceptions of section 17 of the Bankruptcy Act, the alleged wrongs of Robey must have in effect amounted either (1) to a wrongful and malicious injury to the property of another; or (2) to the fraud, embezzlement, misappropriation, or defalcation of Robey while acting, in either instance, as an officer or in a fiduciary capacity.

The following general principles with reference to the meaning and application of these provisions of section 17 of the Bankruptcy Act are now very well established:

[3] The term "officer" is not restricted to public officers, but includes officers of private corporations. 7 C. J. p. 407, and note 67, Black on Bankruptcy (4th Ed) § 1222, and authorities there cited.

[4] The words "fiduciary capacity" are held to import a technical trust actually and expressly constituted, and not such merely as the law implies. The term has no application to debts or obligations merely because they were created under circumstances in which trust or confidence in the popular sense of those terms was reposed in the debtor. Upshur v. Briscoe, 138 U. S. 365, 11 S. Ct. 313, 34 L. Ed. 931; 7 C. J. 406, 407, and notes 61 to 66, inclusive.

[5] A partner, even though he be invested under the partnership agreement with the sole management and control of the partnership assets and business, does not occupy the relation of trustee or fiduciary toward his copartners, or any other relation to them which would bring his misappropriation or conversion to his own use of partnership property within any of the exceptions to release by discharge in bankruptcy enumerated

in section 17 of the act. Inge v. Stillwell, 88 Kan. 33, 127 P. 527, 42 L. R. A. (N. S.) 1093 and note; Martin v. Starrett, 97 Neb. 653, 151 N. W. 154; Karger v. Orth, 116 Minn. 124, 133 N. W. 471; Stephens v. Milikin, 35 Ga. App. 287, 133 S. E. 67; 7 C. J. p. 406 and note 61.

[6] Embezzlement was not known to the common law and·is a purely statutory offense. In this country it almost universally applies only to property in which the party charged with the offense has no interest. Hence it is the general rule, which is followed in this state, that a partner cannot be held guilty of embezzlement of partnership property. Texas Penal Code 1925, c. 15, tit. 17; McCrary v. State, 51 Tex. Cr. R. 469, 103 S. W. 926, 123 Am. St. Rep. 903; Ex parte Sanders, 23 Ariz. 20, 201 P. 93, 17 A. L. R. 980 and note collating authorities page 982; 7 C. J. p. 445.

The only case to the contrary of the last-stated principle coming to our notice is that of State v. Kusnick, 45 Ohio St. 535, 15 N. E. 481, 4 Am. St. Rep. 564, the facts of which are practically on all fours with those of the case at bar. Defendant in that case was an officer or trustee of a business trust, the funds of which he ·was charged with having embezzled. The concern was held ·to be a partnership, and the conviction was upheld on the ground that under the Ohio statute misappropriation of partnership assets by one of the partners constituted embezzlement.

It is not seriously questioned by appellant that the trust company in the present instance was in law a partnership under the decisions of this state. We think it is unnecessary to discuss in detail the provisions of the declaration of trust as disclosed by plaintiff's original and supplemental petitions. They do not materially differ from those enumerated in the opinion in Thompson v. Schmitt, 115 Tex. 53, 274 S. W. 554, and the other opinions immediately following it, which were handed down by our Supreme Court on June 24, 1925. The following ·quotation from the opinion in the Schmitt Case is we think apropos of our present inquiry:

"With certificate holders occupying the relation to the property of its actual and ultimate proprietors, entitled to remedies enforcing their rights as such, we .cannot assent to the doctrine that they lack anything in the way of interest in or control over the property which would warrant our refusal to consider them partners. Despite the contrary view of eminent courts of other jurisdictions, we cannot allow the mere matter of an express delegation to certain members of a voluntary commercial association of exclusive control over the. common property to convert into a trust what would otherwise be universally considered a joint-stock company, with the members subject to the liabilities of partners."

[7, 8] The appellant contends, however, that, although under the trust agreement the certificate holders, including Robey, are to be held as partners with reference to outsiders dealing with the concern and their liability to be governed accordingly, still as to dealings among themselves and with the trustee named in the declaration of trust their relations are to be determined by the trust instrument. There is much force in this contention as applied to a situation where the agreement among the parties does not in fact create a partnership, but the parties thereto are as to third parties held liable as such on the ground that they have permitted themselves to be so held out and are therefore estopped from denying the relationship in defeat of liability in favor of those who have acted in good faith upon the assumption that they were partners. No such case is presented by these business trusts. They are held to be partnerships in fact, not because any one has been misled to deal with the concern under circumstances that would relieve him from inquiry into the true relationship of those interested therein, but because the very agreement the parties interested have made is in law a partnership. They are charged with knowledge of the legal effect of the relations created by instruments executed by them originally, or to which they afterwards became parties, and the fact that such· instruments were designed to create a relationship which in law is not effected has no bearing upon the relations actually. created, whether viewed from the standpoint of an outsider or that of the parties themselves. The partnership agreement, in so far as the rights and liabilities of the respective parties inter sese is concerned, may contain any provisions with reference to limitation and extent of liability and management and control of the assets that are not inhibited by positive law or public policy, and these limitations and agreements will be enforced, but, where an attempt is made to limit the liability of a business concern which in law amounts to a partnership, whether in form of an ordinary partnership or joint-stock company, to .the contribution that each partner has made or has contracted to make to the partnership assets, is utterly void, and that is so because, when parties have by their contracts created a relationship, they cannot by contract alter or change its legal effect. And this principle also applies to any technical terms which may be used in the instrument by which the relationship is created. Where a partnership is in fact created by contract, the mere designation of one who is in fact a partner by some official. title or as trustee, does not in law create an office or trust. The relation of the parties to the concern and their property rights therein will be determined by the legal effect of the instrument creating the relation and not by ·any name or title therein employed.

[9, 10] The instrument described in plaintiff's petition clearly created the relation of

partners among the certificate holders, including the defendant, Robey, and, under the authorities, his misappropriation of the funds of the trust company was a debt or obligation as to which his discharge in bankruptcy constituted a release. Therefore the trial court properly, we think, sustained the general demurrer.

The trial court's judgment is affirmed.

Affirmed.