## UPSHUR *v.* BRISCOE.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 146. Submitted January 12, 1891. — Decided February 2, 1891.

The cases reviewed on the question of what are debts created by a bankrupt while acting in a fiduciary character, so as not to be discharged, under § 33 of the bankruptcy act of March 2, 1867, c. 176 (14 Stat. 533).

The obligation in the present case held to have been discharged.

A debt is not created by a person while acting in a "fiduciary character" merely because it is created under circumstances in which trust or confidence is reposed in the debtor, in the popular sense of those terms.

In this case it was held that the widow of the bankrupt, who was alleged to be a fraudulent grantee, was entitled to the benefit of his discharge, she having pleaded it.

ON the 25th of January, 1857, James Andrews, of the parish of Tensas, in the State of Louisiana, executed and delivered to William J. Briscoe, also of said parish and State, the following instrument in writing :

"James Andrews  
        to           } Donation.  
"Annie M. Andrews. )

"STATE OF LOUISIANA, }  
"*Parish of Tensas.* )

"Know all men by these presents that I, James Andrews, of said parish and State, do nominate, constitute and appoint William J. Briscoe, also of said parish and State, my true and

lawful attorney for me and in my name to pay or cause to be paid to Annie M. Andrews the sum of seven hundred dollars ($700) annually, said amount to be paid at the counting-house of some commission merchant, or at some banking-house, in the city of New Orleans, in equal quarterly instalments of one hundred and seventy-five dollars each, said commission or banking-house to be named and specified before the day of payment, by the said W. J. Briscoe to the said Annie M. Andrews. The said payments are to be made commencing with the date of this instrument, and continuing during the natural life of the said Annie M. Andrews, subject to the conditions and restrictions hereinafter enumerated, viz.: The payments are to be regularly made as above set forth, according to the discretion of the said William J. Briscoe of the general good conduct of the said Annie M. Andrews, which conduct must in all respects comport with the character and bearing of a discreet, prudent female.

"The said William J. Briscoe, being here present, accepts this appointment and trust, and binds himself to carry out the provisions of the same according to its true intent and meaning; and I do further constitute and appoint the said William J. Briscoe my attorney-in-fact to have and receive the sum of ten thousand dollars ($10,000), to be held by him for the benefit of the said Annie M. Andrews, subject to the conditions hereinafter enumerated, viz.: It is understood that the annual payment of seven hundred dollars, as above secured, shall be considered as interest upon said amount of ten thousand dollars; and, first, it is provided that in case the said Annie M. Andrews shall hereafter marry and leave issue, this amount of ten thousand dollars shall remain invested as heretofore in the hands of said William J. Briscoe, and the interest shall continue to be paid as heretofore mentioned, and, in case of the death of the said Annie M. Andrews, such children, legal issue of her, shall become possessed of the above amount of ten thousand dollars unconditionally in full possession, to be paid by the said William J. Briscoe.

"Second. It is provided, that in case of my death occurring before that of the said Annie, the above amount of ten

thousand dollars shall be placed unconditionally in her hands by the said William J. Briscoe, provided only she shall have no legal issue. In case, however, she shall, at the time of my death, have any child or children, legal issue of her body, that the provisions heretofore enumerated shall be strictly adhered to ;

" And, third, It is provided that, in case of the death of the said Annie M. Andrews without legal issue of her body surviving, then the above sum of ten thousand dollars shall revert to me, my heirs or assigns.

" This done and signed, at St. Joseph, in said parish and State, this 25th day of January, A.D. 1857, in presence of Geo. W. Williams and Edgar D. Farrar, competent witnesses.

" JAMES ANDREWS.

" G. W. WILLIAMS.
" E. D. FARRAR."

On the same day, and on the same paper, Briscoe signed the following instrument :

" And now to these presents also comes William J. Briscoe, who accepts this mandate in all its clauses, and binds himself faithfully to carry the same into effect, and the more effectually to secure the faithful performance of the same he also binds himself as surety for the said James Andrews, that the within mandate and all the stipulations therein contained shall be well and faithfully executed, and that the same shall be complied with in all its clauses.

" Thus done and signed, at St. Joseph, on the 25th of January, A.D. 1857, in the presence of G. W. Williams and Edgar D. Farrar.

" Witnesses :            W. J. BRISCOE.
   " G. W. WILLIAMS.
   " E. D. FARRAR."

Annie M. Andrews, named in the paper signed by James Andrews, at the same time and place signed the following instrument :

" And at the same time and place also came the said Annie M. Andrews, who hereby declares that she accepts the above in all its parts and clauses, ratifying and accepting the said appointment of the said William J. Briscoe as her trustee, and binding herself to confirm and abide by the above mandate in all its provisions.

"Thus done and signed, at St. Joseph, on the 26th of January, A.D. 1857, in presence of Geo. W. Williams and Edgar D. Farrar.

"Witnesses:                                    ANNIE M. ANDREWS.
    "G. W. WILLIAMS.
    "E. D. FARRAR."

On the 18th of February, 1857, these papers were all of them recorded in the office of the recorder of the parish, in a "Book of wills and donations."

On the 1st of August, 1881, Annie M. Andrews, who had become by marriage Annie M. Upshur, and whose husband had died, and her son, James A. Upshur, an adult, filed their petition in the Ninth District Court for the parish of Tensas, Louisiana, against Mary E. Castleman, widow of William J. Briscoe, who had died about September, 1880, intestate, and his three daughters and heirs-at-law and legal representatives, Mrs. Elizabeth Clinton, Mrs. Frances Chamberlain and Mrs. Betty Scott Goldman and their respective husbands. The petition set forth the three instruments signed, respectively, by James Andrews, W. J. Briscoe and Annie M. Andrews, and averred as follows: William J. Briscoe received from James Andrews the sum of $10,000, and paid to the female plaintiff annually $700, until about January, 1861. On February 26, 1866, Briscoe, to secure the payment of his five promissory notes for $10,000 each, given for borrowed money, mortgaged to Given, Watts & Co., of New Orleans, all the property owned by him, consisting of a cotton plantation in the parish of Tensas, known as the Mound plantation, embracing 4357 acres, with all the growing crops, buildings, household furniture, machinery, corn, stock, fodder, hay, and all other appurtenances. On November 29, 1866, he intermarried

with the defendant, Mary E. Castleman. On January 14, 1868, Mrs. Mildred Gregory, as holder of three of the five notes secured by said mortgage, instituted suit thereon against Briscoe, and on March 7, 1868, caused the property described in it to be adjudicated to her for $20,000. On April 1, 1868, Briscoe was adjudged a bankrupt, and was duly discharged December 19, 1868. The petition states that duly certified copies of the proceedings in bankruptcy are annexed to it, but they are not found in the record. On November 13, 1868, the defendant Mary E. Castleman instituted suit against her husband, Briscoe, for a separation of property, and a judgment was entered on the same day decreeing her to be separate in property from her husband, and dissolving the community of acquests and gains between them. On December 12, 1868, Mrs. Mildred Gregory, for the consideration of $4517.82 in cash and $25,000 in notes, conveyed to Mary E. Castleman the Mound plantation, together with all the growing crops, stock, material and other property acquired by her at the sheriff's sale. Briscoe at his death left no other property. The female plaintiff was married in July, 1858, and the other plaintiff, the sole issue of such marriage, was born in 1859. James Andrews died about January, 1860, and by the terms of the constitution of mandate, the female plaintiff then having one child, the said sum of $10,000 was to remain invested in the hands of Briscoe, the interest to continue to be paid to her; but she had not received from Briscoe any part of the principal, nor any part of the stipulated interest since about April, 1867, and there is now due to the plaintiffs, to be paid from the property and effects of Briscoe, wherever found, the sum of $10,000, with arrears of interest at the rate of $700 per year since January 1, 1861, less the sum of about $700 paid about April, 1867, with legal interest on the stipulated annual payments of $700, from January 1 of each year, from the year 1862, inclusive. The conveyance of the property by Mrs. Mildred Gregory to Mary E. Castleman, December 12, 1868, was a fraudulent simulation, contrived and intended by Briscoe to defraud the plaintiffs and to defeat the execution of the trust, and Mary E. Castleman received the title of the

property for the use of Briscoe, who paid the consideration expressed therefor and continued in possession of the property. He procured Mrs. Mildred Gregory, a preferred creditor, to provoke the seizure and sale of all his property and accept the adjudication thereof, and he then made a surrender in bankruptcy, and was adjudicated a bankrupt and discharged. He then procured Mary E. Castleman to obtain the judgment of separation, and Mrs. Mildred Gregory to convey the entire property to her. Briscoe, up to the time of his death, retained the exclusive control of the property and of the business relating to it, and himself paid to Mrs. Gregory the said sum of $4517.82, from the proceeds of the crops of 1868. The plaintiffs very recently, for the first time, have been informed that Briscoe procured the conveyance of the property to Mary E. Castleman with the intent to defraud them and prevent the enforcement of the trust. The prayer of the petition is, that the defendants pay to the plaintiffs the sum of $10,000, with 7 per cent per annum interest from January 1, 1861, less the sum of $700 paid about April 1, 1867, with 5 per cent per annum interest on each annual payment of $700, from January 1 of each year, from the year 1862, inclusive; that the conveyance of December 12, 1868, be declared simulated and fraudulent, and the property be declared to be the property of the estate of Briscoe and subject to the payment of his debts and obligations; and for general relief.

Mary E. Castleman, by the name of Mary E. Briscoe, filed exceptions to the petition, also an answer, which set up as a defence the discharge of Briscoe in bankruptcy, with other defences. Mrs. Goldman and her husband answered the petition, but did not set up the discharge in bankruptcy.

In November, 1882, the plaintiffs filed an amendment to their original petition, adding further allegations intended to show that the transfer of the property from Briscoe to his wife was void; that at least one undivided half of it belonged to his succession, subject to a settlement of the community between him and his wife; and that the pretended judgment of separation was a nullity.

Mary E. Briscoe (now Mary E. Castleman) answered the

amended petition, and reaffirmed all the averments of her original answer.   She also pleaded a prescription of five years. Mrs. Goldman and her husband, for answer to the amended petition, adopted all the allegations of their original answer, but did not plead the discharge in bankruptcy.   Mrs. Clinton and her husband and Mrs. Chamberlain and her husband answered the petition and amended petition, but did not set up the discharge in bankruptcy.

.The case was tried by the District Court, which entered a judgment in favor of Mary E. Briscoe, and adjudged a recovery in favor of the plaintiffs against the heirs of Briscoe, for $700 annually from January 1, 1872, with 5 per cent interest, as claimed, and costs, restricting the judgment as to those sums to the property and effects of the succession of Briscoe, wherever found, reserving the right to his heirs to renounce or accept the succession, with the benefit of inventory thereafter, and rejecting the demand of the plaintiffs for $10,000, set out in the petition, as premature in respect to the heirs of Briscoe.

The plaintiffs appealed from this judgment to the Supreme Court of Louisiana.   The opinion of that court was given May 19, 1884, by Mr. Justice Manning, and is reported in 37 La. Ann. 138.   It considered the question whether the obligation assumed by Briscoe was fiduciary, within the meaning of section 33 of the bankruptcy act of March 2, 1867, c. 176, (14 · Stat. 533,) which is the statute applicable to the present case, and reads as follows : " That no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act ; but the debt may be proved, and the dividend thereon shall be a payment on account of said debt ; and no discharge granted under this act shall release, discharge, or affect any person liable for the same debt for or with the bankrupt, either as partner, joint contractor, indorser, surety or otherwise."   The court arrived at the conclusion that the instrument signed by Andrews created a trust ; that the debt of Briscoe to the plaintiffs was a debt created by him while acting in a fiduciary character, within the meaning of

section 33; and that his discharge in bankruptcy did not affect his liability for the obligation which he assumed.

On the same day, the court entered a judgment reversing the judgment of the District Court in these particulars : "That instead of rejecting the, plaintiffs' demand the same is maintained, and the sales and conveyances by which Mildred Gregory received title to the Mound plantation and its appurtenances from the sheriff, and by which she afterwards conveyed title to Mary E. Briscoe, are annulled, cancelled and set aside, and the property thus conveyed is declared to belong to the succession of William J. Briscoe, and to be liable to plaintiffs herein for the satisfaction of this judgment;" that the plaintiffs recover of the succession of Briscoe $700, with 5 per cent interest thereon from January 1, 1872, and the same sum with the same interest from January 1 of each succeeding year until paid, and the further sum of $10,000, and costs of suit; and that in other respects the judgment be affirmed. Five days afterwards the heirs of Briscoe applied for a rehearing, which was granted, and the case was argued orally in November, 1884.

On the 16th of March, 1885, the court filed an opinion, delivered by Mr. Justice Fenner, reported in 37 La. Ann. 148, and concurred in by Mr. Justice Manning in a separate opinion, 37 La. Ann. 154. The court held, in regard to the discharge in bankruptcy, that the decision of this court in *Hennequin* v. *Clews*, 111 U. S. 676, made since the original opinion and judgment, had altered its conclusions as to the effect of such discharge. It also cited the cases of *Chapman* v. *Forsyth*, 2 How. 202, *Neal* v. *Clark*, 95 U. S. 704, and *Wolf* v. *Stix*, 99 U. S. 1, as showing that its former conclusion was erroneous; and held that the debt of Briscoe was not created by him while acting in a fiduciary character. The views it announced were as follows : "Andrews delivered to Briscoe $10,000, for which Briscoe obligated himself to pay seven per cent interest annually. This interest was to be paid to Annie M. Andrews, during her life or that of Briscoe, with the discretion, however, of withholding it from her in case of her improper deportment. But the obligation to pay the interest was, nevertheless, abso-

lute and unconditional, and if he judged Annie M. Andrews unworthy to receive it, it would have remained as a debt due to the ultimate beneficiary of the capital. This is apparent from the absence of any indication of a purpose to let Briscoe have the use of the money without interest, and from the incongruity of construing otherwise the discretion confided to him of judging of her worthiness to receive it; for if, by deciding against the propriety of her conduct, he could absolve himself from the obligation of paying the interest at all, it would create an antagonism between his duty and his interest, which could find no support in a rational interpretation of the writing. Therefore, we say, he was absolutely and unconditionally bound to pay interest on the money as long as he held it. This, unquestionably, implied the right to use the money, and to use it as his own; for no authority is given to make particular investments of it for account of the beneficiary, and such investments would have been at his own exclusive risk; and if unfortunate, however prudently made, they would have furnished him no excuse for non-payment of either principal or interest. It imposed the further obligation of returning the $10,000 (together, as we have shown, with any unpaid interest) to the beneficiary named, or to Briscoe or his heirs or assigns, in certain definite contingencies named and not necessary here to detail. Such is the plain import of the provisions of the so-called 'trust.'" It said that the trust reposed in Briscoe was a trust simply in his "punctuality" and "integrity," the same trust which lies at the base of every agency and of every loan or other credit; that the fact that the trust was expressed in the instrument added nothing to its nature, force or effect; and that if the word "trust" had not been used, it would, nevertheless, have been implied in identical measure and strength.

On the same day, the court entered a judgment revoking and setting aside its former judgment, and amending the judgment of the District Court so as to condemn the succession of Briscoe to pay to the plaintiffs the sum of $700, with five per cent interest from January 1, 1872, and the same sum with like interest for each succeeding year, and the further sum of

$10,000 and costs of suit, and affirming the judgment in all other respects, including the limitations on the moneyed judgment, the plaintiffs to pay the costs of the appeal.

The plaintiffs sued out a writ of error from this court, and assigned as errors, that the Supreme Court of Louisiana erred in deciding (1) that Mrs. Briscoe could plead the discharge in bankruptcy of her husband, and (2) that the obligation of Briscoe was affected by his discharge in bankruptcy.

*Mr. Wade R. Young* for plaintiffs in error.

I. The plea of the discharge in bankruptcy was personal to the bankrupt and his representatives, and could not avail the defendant widow, fraudulent assign. This proposition is sustained by the opinion of this court in the case of *Moyer* v. *Dewey*, 103 U. S. 301, in which this court decided that the effect of a discharge in bankruptcy is personal to the bankrupt, and does not avail to release others.

II. The instrument upon which the action is based sets out an express, private discretionary trust, with a remainder and a reversion, one of the strictest trusts known to the English system. Such a technical trust does not come within the operation of the bankrupt act.

The opinion of this court in the case of *Hennequin* v. *Clews*, 111 U. S. 676, cited and relied on by the Louisiana court, can have no possible bearing on this case, except to remove any doubt which might exist as to the right of the plaintiffs to the writ of error, in a case in which the judgment is in favor of the defendant on the plea of bankruptcy.

A factor entrusted with the goods of his principal to be sold, and a pledgee having possession of the property pledged, are not cases of express trusts, and such was all that this court decided in that case.

*Mr. Assistant Attorney General Maury* for Mary E. Briscoe, one of the defendants in error.

Mr. Justice BLATCHFORD, after stating the case, delivered the opinion of the court.

In regard to the character of the obligation assumed by Briscoe, we concur with the views of the Supreme Court of Louisiana in its second opinion. By the instrument signed on the 25th of January, 1857, the relation of debtor and creditor was created between Briscoe and the beneficiaries. It was stated expressly that the annual payment of $700 was to "be considered as interest upon the said amount of $10,000;" and that, in case Annie M. Andrews should marry and leave issue, the $10,000 should remain invested as theretofore in the hands of Briscoe, and the "interest" should continue to be paid as theretofore mentioned. These terms made Briscoe the owner of the $10,000 in his own right. He had the right to use the money in any way he thought proper. Presumably, he could not pay interest on it unless he invested it. The right to use it in any way he thought proper was repugnant to the idea of any fiduciary relation to the money, for there was no obligation upon him to keep it separate from his own money, or to put upon it any marks of identification, or to invest it in any particular securities. The statement in the paper signed by Andrews, that Briscoe accepts the "trust," the statement in the paper signed by Briscoe, that he accepts the "mandate," and the statement in the paper signed by Annie M. Andrews, that she accepts the appointment of Briscoe "as her trustee," do not create a "trust" in its technical sense, or make the debt of Briscoe one created by him while acting in a "fiduciary character." The relation created was merely the usual one of contract between debtor and creditor. Within the meaning of the exception in the bankruptcy act, a debt is not created by a person while acting in a "fiduciary character," merely because it is created under circumstances in which trust or confidence is reposed in the debtor, in the popular sense of those terms.

The case of *Chapman* v. *Forsyth,* 2 How. 202, arose under the bankruptcy act of August 19, 1841, c. 9, 5 Stat. 440, the first section of which provided for the discharge from debts "which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capac-

ity." In that case, it was said that the exception applied to the debts and not to the person, if he owed other debts; and that, if the act embraced, as a fiduciary debt, the debt of a factor who retains the money of his principal, it would be difficult to limit its application. The court added: "It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian' or 'trustee,' are not cases of implied, but special trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act."

The construction by this court of section 33 of the bankruptcy act of 1867 has been as follows:

In *Neal* v. *Clark*, 95 U. S. 704, the question was as to the meaning of the expression in that section, of the exception of a debt created by "the fraud" of the bankrupt; and it was held that the "fraud" referred to in that section meant positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does "embezzlement," with which "fraud" was directly associated in the section, and not implied fraud or fraud in law, which might exist without the imputation of bad faith or immorality.

In *Wolf* v. *Stix*, 99 U. S. 1, the case of *Neal* v. *Clark* was approved; and it was held that the "fraud" intended by section 33 of the act of 1867 did not include such fraud as the law implied from the purchase of property from a debtor with the intent by him thereby to hinder and delay his creditors in the collection of their debts.

In *Hennequin* v. *Clews*, 111 U. S. 676, it was held that one

hypothecating, to secure a debt due from himself, securities which had been pledged to him to secure the obligation of another to him, and failing to return them when the latter obligation was discharged, did not create thereby a debt by fraud, or in a fiduciary character, so that such debt was excepted by section 33 of the act of 1867 from the operation of a discharge in bankruptcy. Mr. Justice Bradley, delivering the opinion of the court said: "There is no more — there is not so much — of the character of trustee in one who holds collateral securities for a debt as in one who receives money from the sale of his principal's property — money which belongs to his principal alone, and not to him, and which it is his duty to turn over to his principal without delay. The creditor who holds a collateral, holds it for his own benefit under contract. He is in no sense a trustee. His contract binds him to return it when its purpose as security is fulfilled; but if he fails to do so, it is only a breach of contract and not a breach of trust."

In *Palmer* v. *Hussey*, 119 U. S. 96, the case of *Hennequin* v. *Clews* was affirmed and followed, in holding, on similar facts, that there was no such fraud in the creation of the debt, and no such trust in respect to the possession of the securities, as to bar the operation of a discharge in bankruptcy. See also *Strang* v. *Bradner*, 114 U. S. 555; *Noble* v. *Hammond*, 129 U. S. 65; and *Ames* v. *Moir*, (decided herewith,) ante, 306.

There is no appreciable distinction between the failure of the bankers to return the collaterals, in *Hennequin* v. *Clews*, and the failure of Briscoe to pay the interest in question.

In *Cronan* v. *Cotting*, 104 Mass. 245, it was held, that the provision of section 33 of the bankruptcy act of 1867, excepting from the effect of a discharge debts created by the bankrupt while acting in any fiduciary character, did not include the obligation of a creditor, to whom the debtor delivered property with directions to sell it and apply in satisfaction of the debt so much of the proceeds as might be necessary for the purpose, to pay over to the debtor the balance of the proceeds of the sale remaining after such satisfaction; but rather implied a fiduciary relation existing previously to, or independ-

ently of, the transaction from which the excepted debt arose; and that, if such an obligation constituted a fiduciary relation such as the statute contemplated, almost all pecuniary obligations, especially those implied by law, would be included in the exemption. The court said : " The debt, in this case, arose exclusively out of a single transaction between the parties. Its creation involved no element other than that of contract. The existence of the liability did not spring from any breach of trust. The only default consisted in the non-payment of the balance due to the plaintiff, after satisfying the purpose of the pledge. The debt did not result from, but preceded, that default." In the present case, the debt of Briscoe preceded his default, and was not created by his failure to carry out the provisions of the mandate.

It is to be noted that the language of section 33 of the act of 1867 excepts debts created by the bankrupt " while acting in any fiduciary character; " and the language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created. In this view, it was said in *Cronan* v. *Cotting, supra:* " We are inclined to the opinion that the phrase implies a fiduciary relation existing previously to, or independently of, the particular transaction from which the debt arises. The collocation tends to favor this interpretation. If the phrase 'while acting,' etc., be referred to that which immediately precedes, it implies something in the nature of defalcation. If it be referred to the first branch of the provision, its association with fraud and embezzlement carries the implication of a debt growing out of some fraudulent misappropriation, or, at least, breach of trust."

It is also assigned for error that the plea of the discharge of Briscoe in bankruptcy was personal to him and his representatives, and could not avail his widow; and the case of *Moyer* v. *Dewey*, 103 U. S. 301, is relied on to sustain this view. But it is not applicable. In that case the bankrupt, after his discharge, confessed judgments founded on debts which existed prior to his discharge, and the suit was brought to reach property which had been conveyed by him to the defendants,

before his bankruptcy, in fraud of his creditors. The defendants other than the bankrupt pleaded the discharge in bankruptcy, and he failed to answer. This court held that, so far as the discharge was concerned, its only effect was personal to the bankrupt, and did not avail to release the fraudulent grantees from liability for the fraud committed by them. It is manifest that the discharge would not have availed the bankrupt if he had pleaded it, and that it could not avail his fraudulent grantees. Moreover, in *Moyer* v. *Dewey*, the transfer of property which was attacked took place prior to the bankruptcy, while that assailed in the present case was made subsequently thereto, so far as Mrs. Briscoe is concerned; and in that case the judgments which were rendered against the debtor subsequently to the discharge, were founded on debts which existed prior to the discharge. Therefore, the attacking creditors in that case were creditors at the date of the fraudulent transfer, and remained such, by the subsequent judgments, at the date they brought their suit to set aside the fraudulent transfer. But in the present case the transfer to Mrs. Briscoe took place after the bankruptcy, and the debts here sued on were barred, and they were not revived by judgments taken subsequently to the discharge. As she derived her title, as is alleged, from Briscoe, she is entitled to the full benefit of the position in which he stood at the time the alleged fraudulent transfer was made, and to all defences resulting therefrom. She is entitled to plead the discharge in her own defence, and cannot be deprived of its benefit by the failure of his heirs to plead it. See also *Botts* v. *Patton*, 10 B. Mon. 452, 455.

*Judgment affirmed.*