**In re Donald Walter DUISER, Debtor.**

**NATIONAL AGENTS SERVICE COMPANY, INC., Plaintiff,**

v.

**Donald Walter DUISER, Defendant.**

**Bankruptcy No. 7–80–00216.**

**Adversary Proceeding No. 7–80–0046.**

United States Bankruptcy Court, W. D. Virginia, Roanoke Division.

Jan. 7, 1981.

William R. Bess, Roanoke, Va., for plaintiff.

Michael J. Aheron, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

This Complaint was heard and as requested, Counsel was given leave to file briefs, however, no briefs were filed in support of either the Plaintiff or Defendant's positions.

Plaintiff filed Complaint seeking judgment of nondischargeability of a debt in the sum of $9,680.29 from the Defendant. The Plaintiff's original Complaint alleged viola-

tion of 11 U.S.C. § 523 providing the nondischargeability of a debt for obtaining money, property, by false pretenses, false representation, or actual fraud or fraud or defalcation when acting in a fiduciary capacity, embezzlement, or larceny. Following pretrial discovery, Plaintiff filed an amended complaint which alleged by additional language defalcation while acting in a fiduciary capacity. Hence, the thrust of the Complaint herein is that of defalcation of a fiduciary.

The essential facts are as follows: The Defendant was engaged as an insurance agent in the City of Salem in partnership with another; that in the process of issuing policies, many of which were to long haul truckers, the Defendant's agency would issue the policy, receive from the insured a down payment, execute a form financing statement providing for the financing of the remaining portion of the annual premium with finance charges and monthly payment thereof signed by the insured.

The finance agreement was in favor of the Defendant agency upon the Plaintiff's form, copies of which were admitted into evidence as exhibits. The form upon the reverse side thereof contained an "agent's agreement" which in effect assigned to the Plaintiff the rights of the Defendant. Upon receipt of the agreement, the Plaintiff finance company would remit to the Defendant the unpaid balance due on the premium agreement in payment therefor, and thereupon the Plaintiff would direct the insured to remit to the Plaintiff the monthly payments upon the premiums due. The finance company would collect the finance charges as its profit from the insured.

Upon the reverse side of the contract agreement assigned by the Defendant to the Plaintiff it was specifically provided that the Defendant was not an agent of the Plaintiff but solely acting as agent for the insurance companies, whose policies were issued and whose name appeared upon the front page of the agreement.

For a number of years, the Defendant had financed through the Plaintiff and other finance companies under a procedure whereby the premium finance agreement was assigned to the finance company and the proceeds therefrom remitted to Defendant's agency. The receipts by the Defendant would be deposited to the general operating account of the Defendant's agency and used for paying operating expenses, payroll and general overhead. The Defendant from its operating account, would from time to time remit premium payments to the respective insurance company thereby continuing the insurance policies in force. The arrangement in effect, initiated debtor-creditor relationships between the Plaintiff and Defendant, the insured and the Plaintiff finance company, as well as between the insurance company and the defendant agent thereof.

The Defendant's business for years was apparently a profitable operation until the loss of a fleet trucking firm which diminished the Debtor's volume of business, causing cash flow problems and generally placed the Debtor in financial difficulties. When this occurred, the cash flow diminished and in meeting overhead payments the remittance to insurance companies was curtailed, resulting in cancellations of policies and ultimately the Debtor filing a petition in this Court.

Throughout the long period of satisfactory financing arrangements, the Debtors handling of funds from the Plaintiff had been continued without difficulty. The procedure and business practice was known to the Plaintiff and the question was never raised prior to the financial default of the Defendant and the petition in this Court. The receipts from the finance companies had been deposited to the account of the insurance agency and utilized for the said expenditures for the business overhead without any requirement or direction that such funds were, in any manner, to be deposited in separate escrow or trust accounts. The result of which was simply a financing arrangement whereby the Plaintiff and other finance companies financed for the defendant, premium contracts for insureds in consideration of the profit from the finance charges contained in the agreements.

The law applicable to these cases is set forth in 11 U.S.C. § 523(a)(4) providing that a debt is nondischargeable if incurred by fraud or defalcation while acting in a fiduciary capacity, embezzlement, larceny or false pretenses.

■■■ The Plaintiff must prove every element as to fraudulent conduct charged, and this proof must be clear, cogent and convincing. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975). Furthermore, the one seeking to hold the debt nondischargeable by virtue of the exception to discharge provisions in the Bankruptcy Code has not only the burden of proof; but all exceptions set forth in § 523 are to be strictly construed. *See Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

■■ Initially let it be noted that 11 U.S.C. § 523(a)(2) is derived, with slight modification, from § 17(a)(2) of the Bankruptcy Act. 3 *Collier on Bankruptcy* ¶ 523.-07 (15th ed. 1979). Likewise, under the Code, each element of § 523(a)(2) must be proved. Thus, a creditor must prove that the debt was obtained by the use of a statement (i) in writing, *In re Gonzalez*, 287 F.Supp. 281 (S.D.N.Y.1968); (ii) that is materially false, *Doyle v. First National Bank*, 231 F. 649 (4th Cir.), *Matter of Kahn*, 16 F.2d 501, aff'd. 22 F.2d 131 (4th Cir. 1927); (iii) respecting the debtor's or an insider's financial condition, *See* H.R.Rep.No.595, 95th Cong., 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; (iv) on which the creditor to whom the debtor is liable for obtaining money, property, or services reasonably relied; *See* H.R.Rep.No. 595, 95th Cong. 1st Sess. 363 (1977); and (v) that the debtor caused to be made or published with intent to deceive. *Turner v. Ward*, 154 U.S. 618, 14 S.Ct. 1179, 23 L.Ed. 391 (1876); *Raunch v. Manchester Trust Co.*, 240 F. 687 (4th Cir. 1917). *See* 3 *Collier* ¶ 523.09 (15th ed. 1979).

■■ The thrust of the Plaintiff's case is that of a person acting in a "fiduciary capacity." The Court gathers from the complaint and evidence that the Plaintiff's contention is that the funds received were in effect trust funds. This is not supported by the facts presented which actually amount to nothing more than a debtor-creditor relationship whereby the defendant assigned the premium contracts to the plaintiff. When the funds were remitted by the Plaintiff to Defendant, there was no evidence that such funds were anything other than funds of the Debtor placed in the debtor's operating accounts and used in the operation of the Debtor's business.

In *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891), the Supreme Court decided that the use of the word "trust" in an instrument does not make the relationship a fiduciary one within the meaning of the exception in § 17(a)(4) where the legal effect of the instrument is not to create a fiduciary capacity. In this case, no words were used to imply a trust capacity; and a debt is not created by a person acting in a "fiduciary capacity" within the meaning of the Act merely because it is created under circumstances in which trust and confidence is reposed in the popular sense of those terms. The defendant here used the funds as operating capital. This is the only rational construction one can place upon the transaction.

*Remington on Bankruptcy*, Vol. 8, Sec. 3364 at page 249 cites the landmark case of *Davis v. Aetna Acceptance Co.* as follows: "*Davis v. Aetna Acceptance Co.*, 293 U.S. 328 [55 S.Ct. 328, 79 L.Ed. 393] . . .: 'The meaning of the words "fiduciary capacity" has been fixed by judicial construction for very nearly a century. *Chapman v. Forsyth*, 2 How. 202 [11 L.Ed. 236] . . ., decided in 1844 is a decision to the effect that within the meaning of a like provision of the Act of 1841, a factor does not act in a fiduciary capacity; the statute "speaks of technical trusts, and not those which the law implies from the contract." The scope of the exception was to be limited accordingly. Through the intervening years that precept has been applied by this court in varied situations with unbroken continuity. [citing cases]. It is not enough that by the very act of

wrongdoing out of which the contested debt arose the bankrupt has become chargeable as a trustee *ex maleficio.* He must have been a trustee before the wrong or without reference thereto. In the words of Blatchford, J., "The language would seem to apply only to a debt created by a person who was already fiduciary when the debt was created" [citing cases].' "

Professor Countryman in The New Dischargeability Law, 45 Am.Bankr.L.J. 1, at pages 16 and 17 agrees as follows:

" . . . [I]n a line of decision defining the meaning of the term used in the Bankruptcy Acts of 1841 and 1867 the Supreme Court has construed 'fiduciary' to be confined to trustees under 'technical trusts and not those which the law implies from contract,' so that the exception does not apply to factors who convert the proceeds of their sales, creditors who convert, pledge securities, brokers who convert bonds entrusted them for collection, collection agents who convert their collections and debtors who convert collateral which they hold under trust receipts. [citations omitted]"

The foregoing authorities substantiate the fact that the relationship here is simply that of debtor-creditor.

The Plaintiff at trial cited *Virginia Code* § 38.1–327.12.[1] The Plaintiff contends that this section converts the status of the debtor-creditor relationship to that of a fiduciary or "trust" relationship. The Plaintiff's citation of this statute is misapplied. It would appear that the foregoing section was drafted to apply to the debtor-creditor relationship of insurance company and agent and not to the debtor-creditor relationship of the Plaintiff finance company and Defendant. Since the foregoing section has no application to the facts here presented, the Court need not review the statute further except to say that even if the debt did apply the drafting of the statute is so vague in its efforts to create a fiduciary relationship as to be unenforceable. It does not require any segregation whatsoever of funds by a licensee in a separate depository account, escrow, or otherwise. It would appear that this statute is a gratuitous effort to legislate the status of a business relationship between an insurance company and its agents. The statute does not apply to this case and the facts herein.

From the facts presented, the Court can find no evidence whatsoever of a false or fraudulent representation nor any semblance of a fiduciary relationship, and accordingly an Order Dismissing the Complaint will be entered.

1. "All premiums, return premiums, or other funds received in any manner by an agent or a surplus lines broker shall be held by the licensee in a fiduciary capacity. The agent or surplus lines broker shall, in the regular course of business, account for and pay the same to the insured or his assignee, insurer, or agent entitled thereto when such payment is due; provided, however, that nothing contained herein shall be deemed to require any licensee to maintain a separate depository account, escrow, or otherwise." (1979, c. 513.)