**In the Matter of Walter C. GOOD, Debtor.**

**INTERCONTINENTAL LIFE INS. CO., Plaintiff,**

v.

**Walter C. GOOD, Defendant.**

**Bankruptcy No. 82–465.**
**Adv. No. 82–382.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 17, 1983.

---

Lucinda J. Beneke, Clearwater, Fla., for plaintiff.

Charles E. Thomson, Pinellas Park, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for final evidentiary hearing upon a Complaint by Creditor for Determination of Dischargeability of Debt filed by Intercontinental Life Insurance Company (Intercontinental) against Walter C. Good, II, the Debtor in the above-styled Chapter 7 case. The Plaintiff seeks a declaration by this Court that the debt which is admittedly owed by the Debtor to Intercontinental in the amount of $11,-334.80, arose from defalcation and misappropriation while acting in a fiduciary capacity and is, therefore, non-dischargeable

pursuant to § 523(a)(4) of the Bankruptcy Code.

The Court heard argument of counsel, testimony of witnesses, received documentary evidence, considered the record and finds as follows:

On January 24, 1977, Intercontinental and the Debtor, as President and 51% stockholder of Good Health Insurance Agency, Inc. (Good Health), entered into a "General Agent's Contract." (Pl's Exh. # 1). Pursuant to this agreement, Intercontinental authorized Good Health, as general agent, to solicit applications and collect initial premiums for health, accident and life insurance. In return, Good Health was to remit to Intercontinental net premiums (gross premiums minus commissions) collected from the sale of health and accident insurance policies and gross premiums collected from the sale of life insurance policies.

It is undisputed that during the course of the business association between Intercontinental and Good Health, Good Health failed to meet its financial obligations as outlined in the General Agent's Agreement and upon termination of the General Agent's Agreement, Good Health owed a debt to Intercontinental in the total amount of $12,956.90. It is undisputed that the Debtor failed to remit certain premiums to Intercontinental as required by the Agreement, that the Debtor wrote certain checks to Intercontinental which were dishonored by the bank and that due to complaints by purchasers of certain policies, Intercontinental was required to return premiums which had been paid by policy subscribers to Good Health, but never paid over to Intercontinental.

Criminal charges were brought against the Debtor, individually, who pled nolo contendere to five counts of grand larceny and five counts of failure to register and account for funds. In addition to the criminal prosecution, Intercontinental filed a civil suit against the Debtor and on June 16, 1980, the Pinellas County Circuit Court entered a judgment against the Debtor in the amount of $13,000.90 based upon a stipulation for judgment. The Debtor, who had been incarcerated as a result of the criminal proceedings, was granted parole on the condition that he make restitution to Intercontinental for monies due and owing. The Debtor made payments in the amount of $1,666.10.

On March 15, 1982, the Debtor filed a Voluntary Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code and on May 20, 1982, Intercontinental filed this Complaint for Determination of Dischargeability on debt pursuant to § 523(a)(4) of the Bankruptcy Code. It is the contention of Intercontinental that the debt, owed by the Debtor to Intercontinental as represented by the civil judgment, arose from the Debtor's fraud, conversion, defalcation and misappropriation while acting in a fiduciary capacity and is, therefore, non-dischargeable. The Plaintiff further contends that the debt is non-dischargeable because the repayment of the same is a condition of his parole and probation.

The Debtor contends that while the facts are accurate as recited, the debt must be declared to be dischargeable because there existed no fiduciary relationship between the Debtor, individually, and Intercontinental as required by § 523(a)(4). In addition, the Debtor emphasizes the fact that the parties to the General Agent's contract were Intercontinental and Good Health, that Good Health was the broker and designated agent and the debts incurred were corporate debts, not those of the individual debtor.

Bankruptcy Code § 523(a)(4) states:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;"

It must be noted at the outset that the Debtor's plea of nolo contendere in the criminal action and the stipulation for entry of judgment in the civil proceeding are without legal significance in this proceeding. "The effect of § 523(c) is to give the Bankruptcy Court exclusive jurisdiction

over actions to determine dischargeability of a debt excepted from discharge by section 523(a)(2), (4) or (6)." 3 *Collier on Bankruptcy,* ¶ 523.11 (15th ed. 1982). Thus, in the case at bar, even if the previous civil and criminal judgments entered against the Debtor represented judicial findings of liability (as opposed to a plea of nolo contendere and stipulation for entry of judgment), those findings would not automatically be dispositive of the question of dischargeability of debt in bankruptcy. *In re Eskenazi,* 6 B.R. 366, 6 B.C.D. 1140 (Bkrtcy.App. 9th Cir.1980); *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

■ In addition, the argument that the debt owed to Intercontinental, by virtue of the civil judgment, is non-dischargeable because the repayment of the same was made a condition of the Debtor's parole and probation, is without merit. The sole issue before this Court is whether the Debtor incurred the obligation to Intercontinental which was subsequently reduced to a money judgment, by means of defalcation and misappropriation while acting in a fiduciary capacity.

■ Considering first the Debtor's contention that the debt underlying the civil judgment is a corporate debt for which the Debtor cannot be held individually liable, it is necessary to consult Florida law. Chapter 626.795 states:

> "Any life insurance agent who is an officer, director, stockholder or employee of an incorporated life insurance agency, *shall remain personally and fully liable and accountable for any wrongful acts, misconduct, or violations of any provisions of this Code* committed by such license or by any person under his direct supervision and control while acting on behalf of the corporation." (emphasis supplied)

Thus, upon a showing of misconduct, wrongful acts or violations of the "Florida Insurance Code," the Debtor who is both President and 51% shareholder of Good Health shall remain " . . . personally and fully liable . . . " § 626.795 Fla.Stat. (1981).

■ In the context of this adversary proceeding, the Plaintiff must establish not only that the Debtor engaged in wrongful acts, i.e. misappropriation and defalcation, but also that those acts were performed while acting in a fiduciary capacity, thereby bringing the debt sought to be declared non-dischargeable within the purview of Bankruptcy Code § 523(a)(4).

It is a well established principle of law that in order to be deemed a fiduciary within the meaning of § 17(a)(4) of the Bankruptcy Act of 1898, a technical trust must exist prior to the act creating the debt. *Upshur v. Briscoe,* 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1890); *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Thus, the debt must be incurred by one who already occupies the position of a fiduciary prior to creation of the obligation. *In re Romero,* 535 F.2d 618, 621 (10th Cir.1976) (citing *Davis v. Aetna Acceptance Co., supra* ). Finally, the creditor who asserts the claim of non-dischargeability pursuant to § 17(a)(4) must be among the class of persons sought to be protected, i.e. the fiduciary obligation must run to the claimant. *Matter of Cross,* 666 F.2d 873, 880 (5th Cir.1980). While the cases cited herein are cases which were decided under the act, "[t]here is no reason to believe that section 523(a)(4) will be construed otherwise," 3 *Collier on Bankruptcy,* ¶ 523.14 (15th ed. 1983).

In order to determine whether the Debtor was a fiduciary of the Plaintiff prior to the creation of the debt as contemplated by Code § 523(a)(4), it is again necessary to consult Florida law. § 626.561 Florida Statutes states in pertinent part:

> "(1) all premiums, return premiums or other funds belonging to insurers or others received by an agent, solicitor or adjustor in transactions under his license *shall be trust funds so received* by the license *in a fiduciary capacity,* and the licensee shall account for and pay the same to the insurer, insured or other person entitled thereto. (emphasis supplied)

Thus, by the express terms of § 626.561(1) Fla.Stat. (1981), a fiduciary relationship is

statutorily created between an insurance agent and the insurer; any premiums, return premiums or other funds once received by the agent are trust funds. As noted by the District Court for the Western District of Missouri, "Fiduciary status under 11 U.S.C. § 35(a)(4) can be created by state law." *Matter of Whitlock,* 449 F.Supp. 1383, 1390 (W.D.Mo.1978) (citing *In re Romero,* 535 F.2d 618 [10th Cir.1976]).

In the case at bar, there is no doubt that the Debtor diverted funds belonging to Intercontinental to his own use. The misappropriation or defalcation of funds is undisputed. In light of the foregoing, the Court is of the opinion that pursuant to Florida law, the Debtor not only stood in a fiduciary relationship with Intercontinental, but also incurred personal liability for the misappropriated funds as a result of his position as an officer and 51% shareholder of Good Health. Accordingly, the debt owed by Good Health to Intercontinental in the amount of $11,334.80 must be declared nondischargeable.

A separate final judgment will be entered in accordance with the foregoing.