**In re Carlene F. JOHNSON, Debtor.**

**The UTICA MUTUAL INSURANCE CO., Plaintiff,**

v.

**Carlene F. JOHNSON, Defendant.**

**Bankruptcy No. 96–60274.**
**Adversary No. 96–06014A.**

United States Bankruptcy Court,
S.D. Georgia, Statesboro Division.

Jan. 3, 1997.

Jay E. Loeb, Atlanta, GA, for Plaintiff.

Charles B. Merrill, Jr., Merrill, Stone & Parks, Swainsboro, GA, for Defendant.

### *ORDER*

JOHN S. DALIS, Chief Judge.

The Utica Mutual Insurance Company ("Utica") filed this adversary proceeding against the Debtor to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(4) & (6). The Debtor filed a motion to dismiss the proceeding for failure to state a claim upon which relief can be granted. Utica responded to this motion and filed a motion for partial summary judgment. The motions are denied.

The Debtor moves to dismiss the complaint under Federal Rule of Civil Procedure (Fed.R.Civ.P.) 12(b), made applicable to this proceeding under Federal Rule of Bankruptcy Procedure (Fed.R.Bankr.P.) 7012, for failing to state a claim upon which relief may be granted. "A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *Shelly v. Johns–Manville Corp.,* 798 F.2d 93, 97, n. 4 (3d Cir.1986); 5A Wright & Miller § 1368, p. 518. The moving party bears the burden of establishing its right to judgment on the pleadings, and all reasonable inferences from the facts are drawn in favor of the nonmoving party. *Madonna v. United States,* 878 F.2d 62 (2d Cir.1989).

Utica's motion for summary judgment under Count I is governed by Fed.R.Civ.P. 56 (applicable to bankruptcy cases under Fed. R.Bankr.P. 7056). Under Rule 56, this Court will grant summary judgment only if "... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. 56(c). The moving party has the burden of establishing its right of summary judgment. *See, Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The evidence must be viewed in a light most favorable to the party opposing the motion. *See, Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Exceptions to discharge are to be construed strictly and the burden rests with the creditor to prove each element justifying the exception. *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986) (citations omitted); *Household Fin. Corp. v. Richmond (In re Richmond),* 29 B.R. 555 (Bankr.M.D.Fla. 1983). The creditor's burden of proof is by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(A), (I), (J), & (O) and 28 U.S.C. § 1334.

The undisputed material facts are stated as follows. Between January 1, 1992 and August 22, 1994, the Debtor held the office of Tax Commissioner of Bulloch County, Georgia. On or about October 15, 1992, the Debtor executed a $20,000.00 Public Official Bond with Utica to cover any liability the Debtor incurred in her official capacity as Tax Commissioner between January 1, 1993 and December 31, 1996. Subsequently, a grand jury returned a three court indictment against the Debtor under Official Code of Georgia Annotated (O.C.G.A.) § 45–11–4 [1] for malpractice,

---

1. O.C.G.A. § 45–11–4 provides in part:

   Any elected county officer, including the ... tax commissioner ... who shall be charged with malpractice, misfeasance, or malfeasance in office; or with using oppression or tyrannical partiality in the administration or under the color of

misfeasance and malfeasance in office. The indictment accused the Debtor of violating the duties of the Tax Commissioner specified in O.C.G.A. § 48–5–141 [2] (requiring the Debtor to periodically pay Bulloch County the required county taxes, penalties and interest collected), § 48–5–142 [3] (requiring the Debtor to make periodic reports to Bulloch County of the amounts collected), and § 48–5–148 [4] (for failing to collect interest of past due ad valorem taxes). On August 22, 1994, the Debtor pled guilty to all three counts. On May 2, 1995, Utica paid to the Bulloch County Board of Commissioners ("Bulloch County") $30,000.00 in exchange for a covenant not to sue and for an assignment to Utica of all claims held by Bulloch County against the Debtor.

I. The Complaint is not subject to dismissal for failure to state a claim upon which relief can be granted.

█ The Debtor initially argues that the debt she owes Utica constitutes only a con-

---

[2] O.C.G.A. § 48–5–141 provides:

(a) The tax collector or tax commissioner, sheriff, and constables in each county having a population of 30,000 or more shall each week pay over to the proper county officials as required by law the county taxes including, but not limited to, any interest, penalties, or other amounts due the county which they have collected during the week. Such payment shall be made at the same time as the report required by Code Section 48–5–142 and shall be for the period covered by the report.
(b) The tax collector or tax commissioner, sheriff, and constables in each county having a population of less than 30,000 shall every two weeks pay over to the proper county officials as required by law the county taxes including, but not limited to, any interest, penalties, or other amounts due the county which they have collected during the two weeks. Such payment shall be made at the same time as the report required by Code Section 48–5–142 and shall be for the period covered by the report.

[3] O.C.G.A. § 48–5–142 provides:

(a) The tax collector or tax commissioner in each county having a population of 30,000 or more shall make a weekly report to the governing authority of the county of the aggregate amount of taxes collected for the state and the amount collected for the county and shall swear that the report is a correct report of the taxes collected.
(b) The tax collector or tax commissioner in each county having a population of less than 30,000 shall make a report every two weeks to the county governing authority of the aggregate amount of taxes collected during the two-week period. Each report shall separately specify the amount collected for the state and the amount collected for the county. The tax collector or tax commissioner shall swear that the report is a correct report of the taxes collected.

[4] O.C.G.A. § 48–5–148 provides:

his office; . . . or with using any other deliberate or illegal means to delay or avoid the due course or proceeding of law; or with any other illegal conduct in the performance or administration of the office which is unbecoming the character of a public officer; . . . may be indicted.

. . . . .

(a)(1) Except as otherwise expressly provided for by law, ad valorem taxes due the state or any county remaining unpaid on December 20 in each year shall bear interest at the rate specified in Code Section 48–2–40 from December 20, and each tax collector and tax commissioner shall collect the interest on unpaid taxes and account for such interest in his final settlement.
(2) The minimum interest payment on unpaid taxes shall be $1.00.
(3) After notices of taxes due are mailed out, each taxpayer shall be afforded 60 days from date of postmark to make full payment of taxes due before the taxes shall bear interest as provided in this Code section. This paragraph shall not apply in those counties in which a lesser time has been provided by law.
(b) Each tax collector and tax commissioner shall keep a record showing the amount of interest collected from delinquent or defaulting taxpayers, the date upon which the taxes and interest were collected, and the name of the person from whom the tax and interest were collected.
(c) Any provision of law (except Code Section 48–5–511) to the contrary notwithstanding, in each county having a population of not less than 71,500 nor more than 73,000 according to the United States decennial census of 1990 or any future such census, all ad valorem taxes due the county and the state remaining unpaid on November 20 of each year shall bear interest at the rate specified in Code Section 48–2–40 from November 20. On November 20 of each year, the local tax officials shall issue executions against each delinquent or defaulting taxpayer in their respective counties and shall otherwise comply with subsection (a) of Code Section 48–5–161.
(d) Any provision of law except Code Section 48–5–511 to the contrary notwithstanding, in each county having a population of not less than 71,-500 and not more than 75,000 according to the United States decennial census of 1990 or any future such census, all ad valorem taxes due the county and the state remaining unpaid on October 20 of each year shall bear interest at the highest legal rate provided by law from that date. On October 20 of each year, the local tax officials shall issue executions against each delinquent or defaulting taxpayer in their respective counties and shall otherwise comply with subsection (a) of Code Section 48–5–161.

tractual obligation under her bond and is therefore dischargeable. However, when Utica entered the Covenant Not to Sue with Bulloch County, the county assigned to Utica all claims it held against the Debtor. Utica is now asserting against the Debtor Bulloch County's claim for the deficient tax funds, and therefore stands in the shoes of Bulloch County for purposes of determining the dischargeability of the Debtor's obligation. *See, Firemen's Fund Ins. v. Covino (In re Covino),* 12 B.R. 876 (Bankr.M.D.Fla.1981) (Debtor's obligation to surety arising from surety's satisfaction of the debtor's embezzlement from his employer is nondischargeable under 11 U.S.C. § 523(a)(4)); *Accord, Greenberg v. Schools,* 711 F.2d 152 (11th Cir.1983) (affirming the reasoning articulated in *Covino* ).

■ The Debtor also asserts that Utica cannot establish that the Debtor owed a fiduciary duty to Bulloch County, and that the lack of a fiduciary relationship precludes a finding of nondischargeability under 11 U.S.C. § 523(a)(4) & (6) [5] as a matter of law. The Supreme Court has not addressed the meaning of "fiduciary" in determining the dischargeability of a debt under the current Bankruptcy Code. Under previous bankruptcy statutes the Supreme Court has consistently held that this term is not to be construed expansively, but refers only to "technical" trusts. *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); *Upshur v. Briscoe,* 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Golden Isles Drywall, Inc. v. Stone (In re Stone),* Ch. 7 Case No. 95–20239, Adv. No. 95–2033, slip op. at 8–9 (Bankr.S.D.Ga., Davis, C.J., Jan. 29, 1996). For dischargeability purposes, "fiduciary" does not include

constructive trusts which are created by the very acts which form the basis of the nondischargeability complaint.

It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto. In the words of Blatchford, J., "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created."

*Davis,* supra 293 U.S. at 333, 55 S.Ct. at 154, 79 L.Ed. at 397–98, *citing, Upshur v. Briscoe,* 138 U.S. at 378, 11 S.Ct. at 318. "Thus, unless there exists some additional fact, section 523(a)(4), as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of agents, *bailees,* brokers, factors, partners, and other persons similarly situated." (Citations omitted, emphasis added.) 3 Collier on Bankruptcy ¶ 523.14, p. 523–92 (15th Ed.1996).

The Eleventh Circuit has only once applied the above-cited decisions to determine the scope of the term "fiduciary" under § 523(a)(4). *Quaif v. Johnson,* 4 F.3d 950, 953 (11th Cir.1993). In *Quaif,* the Court of Appeals ruled that the debtor insurance agent owed a fiduciary duty to insurers for premiums collected on behalf of the insurers, making the debts arising out of the debtor's failure to turn over the premiums to the insurers nondischargeable under § 523(a)(4). *Id.* at 954. The Court cited a Georgia statute which created a fiduciary relationship between the agent and the insurer by specifically stating that all premiums collected by an insurance agent " . . . shall be accounted for in his fiduciary capacity, shall not be commingled with his personal funds, and shall be promptly accounted for and paid to the insurer, insured, or agent as entitled to

---

5. 11 U.S.C. § 523 provides in part: Exceptions to discharge.
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

   (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

such funds...." *Id.* at 953, *citing* O.C.G.A. § 33–23–79. See also, *Eau Claire County v. Loken (In re Loken)* 32 B.R. 205 (Bankr. W.D.Wis.1983) (Wisconsin Statute § 112.01(1)(b) & § 59.15(1)(b) provides that a register of deeds, a public officer, is a fiduciary of fees collected.)

The *Quaif* decision has been criticized for extending the definition of fiduciary beyond that which is contemplated by § 523(a)(4). *In re Marchiando,* 13 F.3d 1111 (7th Cir. 1994). In *Marchiando,* the debtor owned and operated a convenience store licensed to sell Illinois state lottery tickets. The licensure statute provided that the proceeds of the sales "shall constitute a trust fund until paid to the Department," and that the commingling of these proceeds constituted a felony. *Id.* at 1113. The Seventh Circuit Court of Appeals declined to follow the Eleventh Circuit's rationale that a state statute creating a fiduciary relationship for state law purposes controlled whether the debt was nondischargeable under the Bankruptcy Code. *Id.* at 1116. To distinguish between a fiduciary obligation which arises prior to the creation of the debt (which is nondischargeable) from a fiduciary obligation which is created as a result of the debt (which is dischargeable), the Seventh Circuit looked to the relationship of the parties. *Id.* If the creditor maintains an impaired or inferior position to the debtor such that a traditional fiduciary relationship arises (i.e. client-attorney, minor-guardian), the debt remains nondischargeable. If, on the other hand, a statute purports to create a fiduciary relationship on behalf of a creditor with equal or greater competence and sophistication (as in the state and lottery agent relationship), the debt is dischargeable. *Id.*

As Utica points out, decisions of the Eleventh Circuit Court of Appeals are binding precedent upon this court notwithstanding any criticism by other Circuits. However, the instant case is factually distinguishable from the situation analyzed in *Quaif* and also *Loken.* In this instance, unlike in *Quaif,* the relevant state statutes do not create a fiduciary relationship between the Tax Commissioner and Bulloch County. Instead, the statutes create a bailor/bailee relationship by requiring the Debtor to collect and remit to Bulloch County the tax receipts, and did not designate the Debtor a fiduciary, nor did it impose fiduciary-like duties upon the Debtor. The Debtor was therefore not a fiduciary of Bulloch County under a § 523(a)(4) dischargeability analysis.

Despite the lack of a fiduciary relationship between the Debtor and Bulloch County, the complaint is not subject to dismissal for failure to state a claim. Under a plain reading of § 523, the "fiduciary relationship" requirement applies only to debts alleged to be nondischargeable for fraud or defalcation, not to debts alleged nondischargeable for embezzlement or larceny under § 523(a)(4), nor to willful or malicious injuries under § 523(a)(6). *Mullis v. Walker (In re Walker),* 7 B.R. 563 (Bankr.M.D.Ga. 1980); *Golden Isles Drywall, Inc. v. Stone (In re Stone),* Ch. 7 Case No. 95–20239, Adv. No. 95–2033 (Bankr.S.D.Ga., Davis, C.J., Jan. 29, 1996). *Accord, Crawford v. Burke,* 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147 (1904). Therefore, my determination that Utica cannot prove that the Debtor committed fraud or defalcation while acting in a fiduciary capacity does not affect whether the debt was created through embezzlement, larceny or through a willful or malicious injury.

II. The Debtor's guilty pleas do not control this court's determination of dischargeability under 11 U.S.C. § 523(a)(4).

Utica asserts that the Debtor's plea admitting violations of O.C.G.A. §§ 48–5–141, 48–5–142 & 48–5–148 establishes defalcation as a matter of law, and therefore bars litigation of the dischargeability issue. However, as explained above, the Debtor owed no fiduciary duty to Bulloch County under a bankruptcy analysis, thereby precluding Utica's success under this theory even if the guilty plea establishes defalcation as a matter of State law. Utica's § 523(a)(4) count must therefore rest upon embezzlement or larceny.

It is well established that collateral estoppel applies in § 523(a) proceedings.

*Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). When the prior judgment upon which collateral estoppel is asserted was rendered by a state court, the federal court must apply state law collateral estoppel rules. *In re St. Laurent,* 991 F.2d 672 (11th Cir.1993). Georgia law provides that:

> [a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

O.C.G.A. § 9–12–40. Georgia law breaks the collateral estoppel doctrine into a four part test:

> First, there must exist an identity of issues between the first and second actions. . . . Second, the duplicated issue must have been actually and necessarily litigated in the prior court proceeding. . . . Third, determination of the issue must have been essential to the prior judgment. . . . Finally, the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding. (Citations omitted.)

*League v. Graham (In re Graham),* 191 B.R. 489 (Bankr.N.D.Ga.1996).

The state court indictments against the Debtor do not specifically allege that the Debtor embezzled tax funds or committed larceny. *See,* Footnotes 1–4 supra. The Debtor pled guilty to violating the statutes requiring her to make periodic payments of funds, adequately to report the collections, and to collect interest on unpaid taxes. Although embezzlement or larceny may have formed the basis of the guilty pleas, the indictments on their face do not establish that these charges were actually a part thereof, nor that finding embezzlement or larceny was an essential part of the convictions. The guilty pleas therefore do not establish that the Debtor committed embezzlement or larceny, leaving these issues of fact for trial.

It is there for ORDERED that the Debtor's motion to dismiss Utica's complaint is DENIED. It is further ORDERED that Utica's motion for partial summary judgment under 11 U.S.C. § 523(a)(4) is DENIED.